## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

LAUNCH ON DEMAND LLC,

      Plaintiff,

v.

THE UNITED STATES OF AMERICA,

      Defendant.

_____/

## COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND MONEY DAMAGES REQUESTED

Plaintiff Launch On Demand LLC ("Launch On Demand" or "Plaintiff") brings this action against Defendant the United States of America (the "United States," "United States Government," or "Defendant"), and alleges as follows:

## INTRODUCTION

The United States Government cannot compete with "United States commercial providers in the provision of space hardware and services otherwise available from United States commercial providers." *See* 51 U.S.C. § 50702(d)(4). In fact, the United States Government is only able to provide space facilities or services to commercial launches if "**the appropriate agency head determines that . . . equivalent commercial services are <u>not</u> available on reasonable terms**." 51 U.S.C. § 50504(a)(1)(D) (emphasis added).

In violation of this unequivocal congressional mandate, the United States Space Force is competing with Launch On Demand and providing day-of-launch services (and supporting facilities) to commercial space launches.

Since 2018, Launch On Demand has become the leading commercial provider of cost-effective range services known as day-of-launch services, to wit: flight safety analysis, airspace integration, launch collision avoidance, launch communications, long range optics, and telemetry. Using an integrated technological system that efficiently processes data from the National Airspace System, the Marine Transportation System, and an orbital object catalog, Launch On Demand has revolutionized and optimized the day-of-launch services. Launch On Demand has successfully supported five rocket customers with day-of-launch services and currently supports 14 spaceports and launch clients. Launch On Demand is available to support more space launches licensed by the Federal Aviation Administration.

But the Space Force has virtually monopolized the commercial day-of-launch services (and supporting facilities) field, servicing 78% of all commercial launches in the United States in violation of federal law. The Space Force is further cementing its monopoly in the space industry by misrepresenting to commercial space launch providers that to launch from a federal facility, they have to retain the Space Force to provide the day-of-launch services.

This lawsuit is filed to enjoin this abject violation of federal law and prevent the United States from stifling commercial innovation with its government monopoly.

## NATURE OF THE ACTION

1.     Launch On Demand brings five claims against the United States.

2.     Pursuant to the Administrative Procedure Act ("APA"), Launch On Demand seeks an injunction: (i) enjoining the Space Force from providing day-of-launch services (and supporting facilities) to commercial launches as currently agreed and scheduled, and (ii) compelling the Space Force to determine and certify the non-availability of United States commercial launch providers prior to agreeing to provide day-of-launch services to commercial launches as required by the Commercial Space Launch Act.  *See* 5 U.S.C. § 500 *et seq.*; the Commercial Space Launch Act, H.R. 3942, 98th Cong. (1984); 49 U.S.C.  Appendix §§ 2601-2623; 51 U.S.C. §§ 50901-50923.

3.     Also pursuant to the APA, Launch On Demand seeks declaratory relief in its favor finding that the United States has violated federal laws and congressional intent by failing to act as required by federal laws and its own instructions. *See* 5 U.S.C. § 500 *et seq.*

4.     Launch On Demand further sues the United States for monetary damages for violating the Lanham Act by misrepresenting to the space industry

that commercial launches must retain the space services of the United States to launch from a federal facility.  *See* 15 U.S.C. § 1125.

5.    Alternatively, Launch On Demand further sues the United States for an injunction, enjoining the Space Force from misrepresenting to the space industry that commercial launches must retain the space services of the United States to launch from a federal facility.  *See* 15 U.S.C. § 1125.

## THE PARTIES

6.    Plaintiff Launch On Demand LLC is a commercial provider of day-of-launch services for commercial launches licensed by the Federal Aviation Administration ("FAA").  Launch On Demand's principal place of business is located in Cocoa Beach, Florida.

7.    Defendant is the United States of America acting through the United States Space Force, and its predecessor the Department of the Air Force Space Command (collectively, "Space Force").  The Space Force is the sixth service branch of the United States armed forces military service.  The Space Force operates out of six locations including its installation located at the Patrick Space Force Base between Satellite Beach and Cocoa Beach, in Brevard County, Florida.

8.    The United States is *sui juris* and can be sued in this action as provided by 5 U.S.C. § 703, 15 U.S.C. § 1122, and 10 U.S.C. § 9081.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the claims against the United States pursuant to 28 U.S.C. § 1331 because Launch On Demand's claims for violations of the APA and Lanham Act arise under the laws of the United States.  *See* 5 U.S.C. § 500 *et seq.*; 15 U.S.C. § 1051 *et seq.*

10.      The Court also has subject matter jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to Launch On Demand.  *See* 28 U.S.C. § 1361.

11.      The APA vests this Court with the authority to: (i) issue an injunction ordering a federal agency to cease violating and to comply with its legal obligations, and (ii) to declare that the United States has violated federal laws.  *See* 5 U.S.C. § 500 *et seq.*

12.      The Lanham Act creates a cause of action for unfair and deceptive commercial practices.  The Lanham Act contains its own waiver of sovereign immunity, added as part of the Trade Amendments Act of 1999, Pub.L. 106-43, 113 Stat. 218, which states that the United States "shall not be immune from suit in Federal or State court by any person . . . for any violation under this chapter." 15 U.S.C. § 1122.

13.      The Court has personal jurisdiction over the United States because a significant portion of the events giving rise to this action occurred in Florida.

14.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2), (c), (e)(1)(C), *inter alia*, because all or a substantial part of the events or omissions alleged in this Complaint occurred in this District.

15.     Launch On Demand has retained the undersigned attorneys to represent it in the prosecution of this action, and is obligated to pay such attorneys their reasonable fees and expenses.

16.     All conditions precedent to the bringing of this action have occurred, have been performed, or have been waived.

## GENERAL ALLEGATIONS

**I.    The Commercial Space Launch Act prohibits the United States Government from competing with U.S. commercial providers of space services.**

17.     On October 30, 1984, the 40th President of the United States of America, Ronald Reagan, enacted the Commercial Space Launch Act to facilitate the private enterprise of the commercialization of space and space technology. The Act recognized the United States private sector as having the capability to develop commercial launch vehicles, orbital satellites, operate private launch sites and services, and set forth the quest to acquire innovative equipment and services offered by entrepreneurial ventures from the information technology services, remote sensing technology, and telecommunications industries.    *See* the Commercial Space Launch Act, H.R. 3942, 98th Cong. (1984); 49 U.S.C.  Appendix §§ 2601-2623 (currently referred to as 51 U.S.C. §§ 50901-50923).

18.    The Commercial Space Launch Act was amended in 1988, with Congress finding that: "(1) a United States commercial space launch industry is an essential component of national efforts to assure access to space for Government and commercial users; (2) the **Federal Government should encourage, facilitate, and promote the use of the United States commercial space launch industry in order to continue United States aerospace preeminence**; (3) the United States commercial space launch industry must be competitive in the international marketplace; (4) Federal Government policies should recognize the responsibility of the United States under international treaty for activities conducted by United States citizens in space; and (5) the United States must maintain a competitive edge in international commercial space transportation by ensuring continued research in launch vehicle component technology and development." *See* Commercial Space Launch Act Amendments, H.R. 4399, 100th Cong. (1988) (emphasis added).

19.    The Commercial Space Launch Act was further amended in 2015 "to facilitate a pro-growth environment for the developing commercial space industry by encouraging private sector investment and creating more stable and predictable regulatory conditions, and for other purposes." The short title of this amendment is the "U.S. Commercial Space Launch Competitiveness Act." *See* 2015 H.R. 2262 (Nov. 25, 2015); 51 U.S.C. § 10101, *et seq*.

20.    Congress has declared that "**free and competitive markets** create the most efficient conditions for promoting economic development, and **should therefore govern the economic development of Earth orbital space**." 51 U.S.C. § 50111 (emphasis added).

21.    To that end, the director of the Office of Space Commerce has a duty to ensure "that the United States Government **does not compete** with United States commercial providers in the provision of space hardware and services otherwise available from United States commercial providers." 51 U.S.C. § 50702(d)(4) (emphasis added).

II.    **The Space Force cannot provide commercial space services to commercial space consumers <u>unless</u> such services are determined and certified as non-available from a United States commercial provider.**

22.    On December 20, 2019, the 45th President of the United States, Donald J. Trump, signed into law the National Defense Authorization Act for Fiscal Year 2020, creating the Space Force as a separate armed service within the Department of the Air Force. *See* the National Defense Authorization Act for Fiscal Year 2020, H.R. 2500, 116th Cong. (2020).

23.    The Space Force assumed all the obligations that had been previously delegated to the Director of the Office of Space Commerce prior to the Space Force's creation, including the obligation to ensure that the United States Government does not compete with United States commercial providers of space

services.  *See, e.g.*, 51 U.S.C. § 50702(d)(4).

24.    Federal statutory law requires that the Space Force comply with two main types of requirements before it services the private space sector: (1) make determinations of non-availability of equivalent, commercial space entities prior to providing its own services; and (2) require or provide written certification requirements demonstrating the non-availability of commercial space entities, with detailed justifications.

25.    One of primary responsibilities of the Space Force, which had been previously delegated to the Director of the Office of Space Commerce, is "**ensuring that the United States Government does not compete with United States commercial providers in the provision of space hardware and services otherwise available from United States commercial providers**."  51 U.S.C. § 50702(d)(4) (emphasis added).

26.    Indeed, the United States Government is only able to provide space facilities or services to commercial launches if:

> … the Administrator, the Secretary of Defense, or the appropriate agency head determines that—
>
> (A)    the facilities will be used to support commercial space activities;
>
> (B)    such use can be supported by existing or planned Federal resources;
>
> (C)    such use is compatible with Federal activities;

(D)    equivalent commercial services are not available on reasonable terms; and

(E)    such use is consistent with public safety, national security, and international treaty obligations.

51 U.S.C. § 50504.

27.    Similarly, the United States Government's own instructions and operational guidelines establish a procedure designed to ensure that the Space Force does not compete with commercial providers of space services.

28.    Specifically, the Department of the Air Force Space Command, Instruction 11.5.5 (June 15, 2007), requires the United States Government to "[d]etermine, as a prerequisite to providing Air Force-owned or controlled facilities, equipment and/or services to the private sector, that . . . **equivalent commercial services are not available on reasonable terms** where (i) equivalent means substantially the same property in terms of function, capacity, utility, and quality; (ii) available means as and when needed by the user to the user's reasonable satisfaction; and (iii) reasonable means that price and other terms and conditions of use are commercially reasonable."  *See* Instruction 11.5.5, Air Force Space Command Instruction 10-1215 (June 15, 2007) (emphasis added).

29.    The 45th Space Wing is the unit of the Space Force responsible for providing range services to commercial space launches in Cape Canaveral. Instruction 11.1.3 addresses the provision of the Space Wing available support. This instruction establishes that "[t]his term means the space wings **may provide**

**base support where substantially equivalent support is <u>not</u> available from domestic commercial/ spaceport sources on reasonable terms**.  Factors such as price, quality, availability and schedule may be considered when determining whether a service is substantially equivalent."  *See* Instruction 11.1.3, Air Force Space Command Instruction 10-1215 (June 15, 2007) (emphasis added).

30.    In the same order, Instruction 11.2.1 requires that the United States "[d]etermine, upon receipt of all necessary information from a requestor, when launch property/services or reentry property/services are available/not available to accommodate specific commercial or non-federal user requests. **<u>A determination of non-availability must be in writing and include supporting rationale</u>. If the commander makes a determination that launch property/ services or reentry property/services are not available, the commander shall forward an information copy of the written notification to HQ AFSPC/A3R**."  *See* Instruction 11.2.1, Air Force Space Command Instruction 10-1215 (June 15, 2007) (emphasis added).

31.    Instruction 11.3 "[r]equire[s] commercial or non-federal users requesting such property/services to provide, among other data, a **<u>written statement</u> that <u>no</u> U.S. domestic firm can reasonably provide substantially equivalent facilities, equipment and/or services**. Supporting data must accompany the statement."  *See* Instruction 11.3, Air Force Space Command

Instruction 10-1215 (June 15, 2007) (emphasis added).

32.     Moreover, the requisite written statement described above shall

include:

(a)     The "reasons domestic firms cannot provide substantially equivalent facilities, equipment and/or services and the process used to make that determination." *See* Instruction 11.3.1, Air Force Space Command Instruction 10-1215 (June 15, 2007).

(b)     "[E]nough information for the wing commander to ensure that provision of Air Force property will not result in giving any commercial user an unfair competitive advantage." *See* Instruction 11.3.2, Air Force Space Command Instruction 10-1215 (June 15, 2007).

(c)     A requirement "that when a domestic, substantially equivalent launch property or service does exist, **the commercial or non-federal entity provide the circumstances that preclude the use of the existing firm's facilities, property and/or services**. When a commercial user represents that it is precluded from using an existing firm, **such reasons shall be provided to the existing firm(s) for comment**. The wing commander should encourage the commercial or non-federal user and existing firm(s) to seek a mutually agreeable solution. If the commercial user and the existing firm(s) are unable to resolve the matter, the wing commander shall determine whether to allow the commercial user to use Air Force launch base property based upon all the available information. The wing commander may elect to elevate the decision to HQ AFSPC/A3." *See* Instruction 11.4, Air Force Space Command Instruction 10-1215 (June 15, 2007) (emphasis added).

(d)     "Determine whether exclusive possession is in the best interest of both the government and the commercial space industry, thereby allowing exclusive use of launch property to be granted to commercial and/or non-federal users. Consider factors such as the program status, date of valid facility request, completeness of documentation, program maturity, benefit to the commercial space industry, benefit to the government and any other matter the wing commander deems appropriate in making the decision to grant exclusive or shared use. **Such decisions must be made in writing and be accompanied by supporting rationale**. Forward

information copies of the written notification and supporting rationale to HQ AFSPC/A3R." *See* Instruction 11.7, Air Force Space Command Instruction 10-1215 (June 15, 2007) (emphasis added).

33.    Instruction 12.3.1 provides that "[p]rior to initiating any other activities, advise prospective commercial and/or non federal users to evaluate commercially available facilities and **provide the wing with documented justification** why these facilities will not meet mission requirements.  **This will ensure that the Air Force does not compete with commercial providers**." *See* Instruction 12.3.1, Air Force Space Command Instruction 10-1215 (June 15, 2007) (emphasis added).

34.    The 45th Space Wing Instruction 10-6.01 also echoes the instructions of the Air Force Space Command Instruction 10-1215.

35.    Instruction 2.2.6 mandates that the Space Force "[e]nsure a non-federal Range Requestor initiates the UDS process, if applicable, and also provides a **written statement** **that no domestic source can reasonably provide substantially equivalent support**." *See* 45th Space Wing Instruction 10-601, Instruction 2.2.6 (emphasis added).

36.    Instruction 4.2.3 establishes with regard to non-federal range users that "**[t]he 45 SW can only provide Range Support where non-federal Range Users certify that substantially equivalent support is not available from domestic commercial/spaceport sources on reasonable terms**. Factors such as

price, quality, availability, and schedule may be considered when determining whether a service is substantially equivalent. Further, the 45 SW can only provide support to non-federal Users if excess capacity exists at the wing." *See* 45th Space Wing Instruction 10-601, Instruction 4.2.3 (emphasis added).

## III. Launch On Demand is a successful commercial provider of day-of-launch services.

37.    Launch On Demand was founded in 2018 by Burton Catledge.  Mr. Catledge is a retired Colonel of the United States Air Force where he served as commander of the 45th Operations Group at Patrick Air Force Base, Florida.  In that role, Mr. Catledge oversaw the Eastern Range's military, commercial, NASA, and ballistic missile launch operations from Cape Canaveral Air Force Station and Kennedy Space Center to Ascension Island, South Atlantic.  The 45th Operations Group operates and maintains $20 billion in instrumentation and infrastructure for the 15-million square mile Eastern Range, operates three airfields, and supports 10,000 customers with communications services.  Prior to this assignment, Mr. Catledge was Deputy Director for Cyber and Space Programs, Office of the Under Secretary of Defense for Acquisitions, Technology and Logistics/Deputy Assistant Secretary of Defense (C3, Cyber and Business), at the Pentagon in Washington, D.C. Mr. Catledge received many promotions and accolades during his employment with the Air Force, including but not limited to the Meritorious Service and Medal with two oak leaf clusters, and the Air Force Commendation

Medal with oak leaf cluster.

38.    In 2018, Mr. Catledge retired from the Air Force to start Launch On Demand.  Since then, Launch On Demand has been providing commercial launch services and has quickly become an industry leader in providing efficient and effective services to the space launch industry, including to various established commercial space enterprises.

39.    Launch On Demand is a commercial provider of space launch services for FAA-licensed launches.  Launch On Demand delivers full-service launch range solutions, reentry, and spaceport technical services through cost-effective launch vehicle tracking, collision avoidance analysis, frequency monitoring, launch area air and sea surveillance, and safety analysis.  Launch On Demand further ensures that Range Safety Launch Commit Criteria ("RSLCC") are met prior to approval for launch and enables safe transit in Low Earth Orbit ("LEO").[1]

40.    Using an integrated approach that innovatively leverages data from the National Airspace System, the Marine Transportation System, and an orbital

---

[1] An LEO is an orbit that is relatively close to the Earth's surface. Normally, it is at an altitude of less than 1000 km but could be as low as 160 km above the Earth.  By comparison, most commercial airplanes do not fly at altitudes much greater than approximately 14 km, so even the lowest LEO is more than ten times higher than that of a commercial airplane's.
*See* https://www.esa.int/ESA_Multimedia/Images/2020/03/Low_Earth_orbit.

object catalog, Launch On Demand provides an integrative approach to ensuring that standard safe launch criteria are met prior to approval of a launch. Through its vehicle tracking services, Launch On Demand can determine launch windows to provide collision avoidance analysis for launch flight paths; monitor frequencies prior to and during launch; surveil air and sea areas around a launch site; and provide safety analysis for a launch. Launch On Demand's services are essential to the successful and safe placement of launch vehicles in space.

41.    Launch On Demand's proprietary system optimizes the delivery of day-of-launch services, reducing the cost of these services by 50%. Moreover, the flexibility of Launch On Demand's operational structure allows Launch On Demand to operate with less than ten staff members per launch, as contrasted with the hundreds of employees required by the Space Force to provide the same services. Thus, Launch On Demand can provide reasonably equivalent or better services than the Space Force.

**IV.   Launch On Demand repeatedly tried to communicate with the Space Force but was ignored.**

42.    Since Launch On Demand's inception in 2018, Mr. Catledge and his team have made numerous attempts to communicate with the United States Government to advise it that Launch On Demand is a "United States commercial provider" of day-of-launch services that has been licensed by the FAA.

43.    For example, on November 16, 2018, Mr. Catledge corresponded with John Raymond, the 1st Chief of Space Operations of the Space Force, and among other things, explained that in 2019, Launch On Demand would provide commercial launch services such as collision avoidance, vehicle tracking, frequency management, communication, and weather tracking for all FAA-licensed launches.

44.    In the spring of 2019, Mr. Catledge had a telephonic conference with Major General DeAnna M. Burt, who was both the Commander for the Combined Force Space Component Command of the U.S. Space Command and the Vice Commander for the Space Operations Command of the Space Force.  During that call, Mr. Catledge shared the mission of Launch On Demand and explained how it would operate within the confines of 51 U.S.C. § 50504.

45.    On July 17, 2020, Mr. Catledge participated in a meeting with the National Space Council where he discussed, among other things, Launch On Demand's capabilities and the applicable law in favor of commercial launch providers.

46.    Then in September of 2020, Mr. Catledge corresponded with Lieutenant General John Thompson, Space and Missile Center Commander in charge of space acquisitions, addressing these same points.

47.    In March of 2021, Mr. Catledge attempted to schedule a meeting with

Brigadier General and Space Force Commander, Stephen G. Purdy to discuss transitioning Eastern Range FAA customers to Launch On Demand's commercially available flight safety analysis in lieu of Space Force support.

48.    In September 2021, Mr. Catledge requested a meeting with the Secretary of the Air Force.  And on November 8, 2021, the office of the Secretary of the Air Force delegated the meeting to the acting head of the Space Acquisitions Secretariat, Brigadier General Steven P. Whitney, who agreed to further discussions.  Although Mr. Catledge followed up on January 18, 2022, the meeting was never scheduled, and Mr. Catledge never heard back from the Space Force again.

49.    Despite these numerous communications and attempted communications with the Space Force regarding Launch On Demand's capabilities as an available commercial provider of day-of-launch services, Launch On Demand was ignored and prevented from providing its commercial day-of-launch services to its current and prospective clients.

**V.    Launch of Demand provides equivalent commercial day-of-launch services.**

50.    Launch On Demand's services are "equivalent"– or indeed, superior – commercial services to those provided by the Space Force, and at all material times have been available on reasonable terms.  For example, Launch On Demand provides Launch Collision Avoidance ("L-COLA") services *every second* of a

launch window, leveraging Launch On Demand's unique algorithms and processes. In comparison, the L-COLA services provided by the Space Force can only provide safety analysis at the *top of each minute*. As such, not only does Launch On Demand provide L-COLA services that are equivalent to those provided by the Space Force, Launch On Demand's commercial services *exceed* the capabilities of the services which the Space Force is currently providing. Additionally, Launch On Demand provides its launch services in a federated architecture that supports launches at discrete geographic locations. Accordingly, Launch On Demand is able to support launches from any spaceport.

51.     Furthermore, Launch On Demand has successfully provided the following launch services for FAA-licensed launches: 1) telemetry service, 2) weather service, 3) surveillance, 4) debris analysis, and 5) orbital analysis.

52.     The telemetry services provided by Launch On Demand are contracted from the same vendor providing telemetry support to the Space Force. The weather services provided by Launch On Demand are provided by a weather support team that previously supported the Space Force. Launch On Demand's surveillance services exceed the capabilities and extend to ranges farther than the Space Force's radar-based surveillance approaches. Launch On Demand uses the same software for debris analysis that the Space Force uses, and Launch On Demand's orbital analysis meets all FAA-license requirements for manned and

man-able launches.

## VI. The Space Force violated its legal obligations under the Commercial Space Launch Act.

53.     Since 2019, the Space Force has provided day-of-launch services (and supporting facilities) to approximately 123 commercial launches.  Space Force is currently providing day-of-launch services (and supporting facilities) to 78% of all U.S. commercial launches, and has decided to continue to provide these services, in violation of federal law and with full knowledge that Launch On Demand is an available United States commercial provider of day-of-launch services.  Indeed, the Space Force has agreed to and is currently scheduled to provide day-of-launch services for all commercial launches from Cape Canaveral and other spaceports in the United States.  The decision to continue to provide launch services to commercial launches (and supporting facilities) and the abject failure to certify the non-availability of United States commercial providers prior to providing such services violate the Commercial Space Launch Act and are contrary to the Congressional intent to have "free and competitive markets" in the space arena.

54.     Based upon, but not limited to, several confidential conferences that Launch On Demand has had with other commercial space entities, the Space Force has failed to act in that it has failed to make the required determinations that other United States commercially available entities with reasonable terms, were *unavailable*, before providing government facilities or services to the private sector.

*See* 51 U.S.C. §§ 50702(d)(4); 50504(a)(1)(D); 50913(1)-(2); and Department of the Air Force Space Command Instruction 10-1215, Instructions 11.1.3; 11.5.5.

55.    Based upon, but not limited to, several confidential conferences that Launch On Demand has had with other commercial space entities, the Space Force has failed to act in that it has failed to require the written certifications of non-availability of other commercial entities as legally required. *See* Department of the Air Force Space Command Instruction 10-1215, Instructions 11.2.1; 11.3; 11.3.1; 11.3.2; 11.4; 11.7; 12.3.1; and 45th Space Wing Instruction 10-601, Instructions 2.2.6, 4.2.3.

56.    Launch On Demand has never been contacted by the Space Force for purposes of answering questions regarding its commercial space capabilities, technology or services, as required.   *See, e.g.,* Air Force Space Command Instruction 10-1215, Instruction 11.4.

**COUNT I**
**INJUNCTIVE RELIEF FOR**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**(Agreement to Provide Scheduled Day-of-Launch Services)**
**5 U.S.C. § 500 *et seq.***

57.    Launch On Demand re-alleges and incorporates paragraphs 1-56 as if set forth fully in this count.

58.    The APA provides for an express grant from Congress for a private right of action to enforce federal rights against federal agencies, waiving the

federal government's sovereign immunity over suits "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted … in an official capacity or under color of legal authority."  5 U.S.C. § 702.

59.     The Department of Defense and the branches of the military, including the Space Force, are "agencies" under the APA. *See* 5 U.S.C. 551(1).

60.     The Space Force has agreed to and is currently scheduled to provide day-of-launch services for all commercial launches from Cape Canaveral and other spaceports in the United States, without certifying that these services are not available from United States commercial providers.

61.     This decision is a final agency action for which there is no adequate remedy in a court because: (i) it marks the consummation of the Space Force's decision making process, and (ii) it is an action by which rights and obligations have been determined, or from which legal consequences will flow.  In fact, the Space Force's actions have had a direct and immediate impact on Launch On Demand's day-to-day business.  Therefore, this decision is reviewable under the APA, 5 U.S.C. § 704.

62.     This decision is unlawful and should be set aside pursuant to 5 U.S.C. § 706(2).

63.     As shown above, Launch On Demand has a substantial likelihood of

success on the merits, given the Space Force's violation of the Commercial Space Launch Act.

64.    Launch On Demand will continue to suffer substantial irreparable harm if an injunction is not granted in its favor because the Space Force will continue to interfere with Launch On Demand's ability to compete in the commercial space marketplace as allowed and envisioned by 51 U.S.C. §§ 50702(d)(4); 50504(a)(1)(D); and 50913(1)-(2), which is contrary to the Congressional intent to have "free and competitive markets" in the space arena.

65.    This irreparable harm to Launch On Demand is concrete and measurable, and outweighs any harm an injunction may cause to the Space Force. Indeed, any injury to the Space Force is the result of its own failure to comply with the Congressional mandate and is significantly outweighed by Launch On Demand's right to participate in the commercial space marketplace, as intended by Congress.

66.    Granting an injunction would not impair the public's interests and would instead *serve* the public interest in a "free and competitive market" in the space arena.

67.    Launch On Demand has no adequate remedy at law.

68.    Thus, an injunction is both appropriate and necessary in this case as Launch On Demand has a right to enforce its federal rights against the United

States.

**WHEREFORE**, Plaintiff Launch On Demand requests the Court enter an order granting a preliminary and permanent injunction against Defendant the United States enjoining the Space Force from providing day-of-launch services to scheduled commercial launches as currently agreed, and awarding any other relief the Court deems just and proper.

<u>**COUNT II**</u>
**INJUNCTIVE RELIEF FOR**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**
**(Failure to Act)**
**5 U.S.C. § 500** *et seq.*

69.    Launch On Demand re-alleges and incorporates paragraphs 1-56 as if set forth fully in this count.

70.    The APA provides for an express grant from Congress for a private right of action to enforce federal rights against federal agencies, waiving the federal government's sovereign immunity over suits "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof . . . failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702.

71.    The Department of Defense and the branches of the military, including the Space Force, are "agencies" under the APA. *See* 5 U.S.C. 551(1).

72.    The Space Force failed to take a required discrete and

nondiscretionary agency action when it failed to make the legally required determinations of non-availability, and to ensure the provision of the written certifications regarding the non-availability, as further detailed above, *prior to* deciding to provide the Space Force's own space services to commercial space launches.

73.    The Space Force wrongfully denied Launch On Demand the opportunity to compete as a commercial provider of space day-of-launch services, as allowed, encouraged, and intended by Congress and federal laws, causing Launch On Demand to suffer a concrete harm.

74.    By failing to make the requisite determinations of non-availability, and failing to obtain or ensure the provision of the requisite written certifications, the Space Force's actions constitutes a final agency decision reviewable under 5 U.S.C. § 704.

75.    This Court has the authority to compel the Space Force to comply with its statutory obligations under the Commercial Space Launch Act, pursuant to 5 U.S.C. § 706(1).

76.    As shown above, Launch On Demand has a substantial likelihood of success on the merits.

77.    Launch On Demand will continue to suffer substantial irreparable harm if an injunction is not granted in its favor because the Space Force will

continue to interfere with Launch On Demand's ability to compete in the commercial space marketplace as allowed and envisioned by 51 U.S.C. §§ 50702(d)(4); 50504(a)(1)(D); and 50913(1)-(2).

78.    This irreparable harm to Launch On Demand is concrete and measurable, and outweighs any harm an injunction may cause to the Space Force. Indeed, any injury to the Space Force is the result of its own failure to comply with the Congressional mandate and is significantly outweighed by Launch On Demand's right to participate in the commercial space marketplace, as intended by Congress.

79.    Granting an injunction would not impair the public's interests and would instead *serve* the public interest in a "free and competitive market" in the space arena.

80.    Launch On Demand has no adequate remedy at law.

**WHEREFORE,** Plaintiff Launch On Demand requests the Court enter an order granting a preliminary and permanent injunction against Defendant the United States compelling the Space Force to determine and certify the non-availability of United States commercial launch providers before agreeing to provide day-of-launch services to commercial launches, and awarding any other relief the Court deems just and proper.

## COUNT III
### DECLARATORY RELIEF FOR
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT
### 5 U.S.C. § 500 *et seq.*

81.    Launch On Demand re-alleges and incorporates paragraphs 1-56 as if set forth fully in this count.

82.    The APA provides for an express grant from Congress for a private right of action to enforce federal rights against federal agencies, waiving the federal government's sovereign immunity over suits "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."  5 U.S.C. § 702.

83.    The Department of Defense and the branches of the military, including the Space Force, are "agencies" under the APA. *See* 5 U.S.C. 551(1).

84.    The Space Force's actions, as described herein, constitute a final agency action reviewable under 5 U.S.C. § 704.

85.    Launch On Demand has a bona fide, actual, and present practical need for a declaration that the Space Force has violated the Commercial Space Launch Act by:

      **(i)**    agreeing to provide and scheduling day-of-launch services for all commercial launches from Cape Canaveral and other spaceports in the United States, without certifying that these

services are not available from United States commercial providers; and

**(ii)**  failing to take a required discrete and nondiscretionary agency action when it (a) failed to make the legally required determinations of non-availability, and (b) failed to ensure the provision of the written certifications regarding the non-availability, as further detailed above, *prior to* deciding to provide the Space Force's own space services to commercial space launches.

86.    The declaration sought by Launch On Demand concerns a present, ascertained, and ascertainable state of facts and present controversy as to the facts as explained herein.

87.    Launch On Demand's rights are dependent upon the facts and the law applicable to the facts as explained herein.

88.    Launch On Demand has an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law as explained herein.

89.    Launch On Demand's antagonist and adverse interests are all before the Court by proper process.

90.    The relief sought in this claim is not merely the giving of legal advice or the answer to questions propounded for curiosity.

91.    As such, Launch On Demand requests that the Court issue declaratory relief and find that the Space Force has violated the Commercial Space Launch Act.

WHEREFORE, Plaintiff Launch On Demand requests that the Court enter an order granting declaratory relief in favor of Launch On Demand and finding against Defendant the United States, declaring that the Space Force has violated the Commercial Space Launch Act, and awarding any other relief the Court deems just and proper.

**COUNT IV**
**MONETARY DAMAGES FOR VIOLATION OF THE LANHAM ACT**
**(FALSE ADVERTISING)**
**15 U.S.C. § 1125(a)(1)(B) & 15 U.S.C. § 1117**

92.    Launch On Demand re-alleges paragraphs 1-56 as if set forth fully in this count.

93.    The United States has violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

94.    The Space Force is directly competing with Launch On Demand in the area of commercial space day-of-launch services.  The Space Force is doing so in a manner to divert commercial space business to the government and away from private commercial enterprise in violation of Congressional intent to have "free and competitive markets" in the space arena.

95.    The Space Force advertises and promotes itself as the *only* option for

commercial space launches from federal facilities. This false and misleading advertising and promotion occurred in interstate commerce.

96.     Specifically, the Space Force has misrepresented to commercial space launchers that to launch from a federal facility, they have to retain the Space Force to provide the day-of-launch services.

97.     These misrepresentations are literally false and misleading representations of material fact to consumers in violation of 15 U.S.C. § 1125(a)(1)(B).

98.     These literally false and/or misleading descriptions of fact actually deceived or tended to deceive a substantial number of consumers with regard to Launch On Demand and its services, technology, and capabilities. This is evidenced by the fact that the Space Force has virtually monopolized the commercial day-of-launch services field, servicing 78% of all commercial launches in the United States in violation of Congressional intent to have "free and competitive markets" in the space arena.

99.     These false and/or misleading descriptions of fact continue to actually deceive or tend to deceive a substantial number of consumers and continue to be material to consumers' commercial space decisions.

100.    The Space Force's false advertising and promoting, described herein, was intended to cause and did in fact cause deception to the public commercial

space sector, misleading consumers as to the true characteristics and qualities of the Space Force's and Launch On Demand's services, goods, and commercial activities. This has also resulted in deception within the commercial space sector with regard to the applicable laws and duties the Space Force must follow and adhere to when operating in the commercial space sector.

101.   The Space Force has acted in this manner willfully and intentionally to monopolize the commercial space sector.

**WHEREFORE**, Plaintiff Launch On Demand requests that the Court enter judgement awarding Launch On Demand its damages in an amount to be determined at trial, including but not limited to the disgorgement of the Space Force's illegitimate profits; awarding Launch On Demand its attorneys' fees and costs as this is an exceptional case; and awarding any other relief the Court deems just and proper.

## <u>JURY DEMAND</u>

Launch On Demand requests a jury trial for all issues so triable under this count.

## <u>COUNT V</u>
## ALTERNATIVELY, INJUNCTIVE RELIEF FOR VIOLATION OF THE LANHAM ACT (FALSE ADVERTISING) 15 U.S.C. § 1125(a)(1)(B) & 15 U.S.C. § 1116

102.   Launch On Demand re-alleges paragraphs 1-56 as if set forth fully in this count.

103.   As a proximate result of the Space Force's acts described above, Launch On Demand has suffered and will continue to suffer irreparable harm in the form of commercial damage and injury to its business interests and sales, such as the direct diversion of sales and business from Launch On Demand to the Space Force, as well as damage to Launch On Demand's business reputation and goodwill.  Without action from the Court to enjoin the Space Force from making misrepresentations and engaging in false advertising, Launch On Demand will continue to sustain serious loss of revenues, profits, and market share, as well as reputational damage.

104.   The remedies available at law, such as monetary damages are inadequate to compensate Launch On Demand for the injuries it has sustained.

105.   Considering the balance of hardships between the Space Force and Launch On Demand, a remedy in equity is warranted.

106.   The public interest would not be disserved by an injunction.  Indeed, the public interest is served when commercial enterprise is able to flourish without government diversion or influence, and when the government is held to Congressional intent to have "free and competitive markets" in the space arena.

WHEREFORE, Plaintiff Launch On Demand requests that the Court enter an order granting an injunction prohibiting Defendant the United States from representing to consumers that the Space Force is the only available option for

commercial space day-of-launch services; and awarding any other relief the Court

deems just and proper.

Dated: April 28, 2023                         Respectfully submitted,

By:    */s/ Francisco A. Rodriguez*
Francisco A. Rodriguez (FBN 653446)
Email:Francisco.Rodriguez@reedsmith.com
Sandra J. Millor, Esq. (FBN 13742)
Primary Email: SMillor@reedsmith.com
Ana R. Ulseth, Esq. (FBN 1022151)
Primary Email: AUlseth@reedsmith.com
Secondary Email: JLago@reedsmith.com
**REED SMITH LLP**
200 S. Biscayne Blvd, Suite 2600
Miami, FL 33131
Telephone: (786) 747-0200
*Counsel for Plaintiff Launch On Demand LLC*