## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **LAUNCH ON DEMAND LLC**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:23-cv-789-CEM-RMN |
| | ) | |
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

For the reasons set forth below, the United States of America moves to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiff Launch on Demand LLC seeks judicial review under the Administrative Procedure Act ("APA") of the U.S. Space Force's decisions to provide services to commercial launches that took place in 2023 and 2024. Because decisions to provide services to past space launches do not present a live controversy with respect to which the court can give meaningful relief, the APA claims are moot and must be dismissed for lack of jurisdiction under Rule 12(b)(1). Moreover, any claims about the provision of services on Space Force property are not capable of repetition, because the law has changed since

Launch on Demand brought this case. The Space Force now enjoys "Special authority for provision of space launch support services," 10 U.S.C. § 2276a, which clearly authorizes the conduct to which Launch on Demand objects.

And if any portion of the APA claims escape dismissal for mootness, they should be dismissed under Rule 12(b)(6). Those claims depend on the assertion that a preexisting statutory provision, 51 U.S.C. § 50504, restricts the Space Force's ability to provide services to commercial space launches. But it does not: the statute only limits the private "use" of federal "space-related facilities." *Id.* § 50504(a)(1). Because Launch on Demand does not allege any impermissible private use of Space Force facilities, it fails to state a claim for violation of this statute.

The Lanham Act claims should be dismissed under Rule 12(b)(6), because they depend on the same misinterpretation. Launch on Demand contends that the Space Force has been falsely or misleadingly promoting itself as a provider of services to commercial space launches, when 51 U.S.C. § 50504 prohibits it from providing those services if Launch on Demand can do so. Because that statute does not limit the Space Force's ability to provide services, and 10 U.S.C. § 2276a clearly authorizes most of the services in question, Launch on Demand fails to state a claim for a violation of the Lanham Act, as well. Moreover, the Space Force statements alleged in support of the Lanham Act claims are not false or misleading on their own terms.

- 2 -

## BACKGROUND

**A.    Statutory Background**

**i.    Commercial Space Launch Act of 1984**

The Commercial Space Launch Act of 1984 instructed the Secretary of Transportation to "encourage, facilitate, and promote commercial space launches by the private sector," and provided a legal framework in which he could do so.  Pub. L. No. 98-575, § 5(a)(1), 98 Stat. 3055, 3057 (codified at 49 U.S.C. app. § 2604(a)(1) (1988)).  Among other things, the statute authorized "the acquisition . . . by the private sector of launch property of the United States . . . and of launch services . . . of the United States."  *Id.* § 15(a) (codified at 49 U.S.C. app. § 2614(a) (1988)).  "Launch services" were defined as "activities involved in the preparation of a launch vehicle and its payload for launch and the conduct of a launch."  *Id.* § 4(4) (codified at 49 U.S.C. app. § 2603(4) (1988)).

The Commercial Space Launch Act Amendments of 1988 required the Secretary to "consider the commercial availability, on reasonable terms and conditions, of substantially equivalent launch property or launch services from a domestic source" before authorizing the private acquisition of public launch property or services.  Pub. L. No. 100-657, § 4(a), 102 Stat. 3900, 3900–01 (codified at 49 U.S.C. app. § 2614(a) (1988)).

ii.    **NASA Authorization Act for Fiscal Year 1993**

Those provisions were superseded by the 1993 appropriations act for the National Aeronautics and Space Administration (NASA), Pub. L. No. 102-588, 106 Stat. 5107, which addressed "Commercial Space Competitiveness." *Id.*, tit. V, 106 Stat. at 5122 (codified at 15 U.S.C. § 5801 *et seq.* (1994)).[1] One section provided for the "Use of Government Facilities." *Id.* § 508, 106 Stat. at 5128 (codified at 15 U.S.C. § 5807 (1994)). It authorized "Federal agencies, including [NASA] and the Department of Defense" to "allow non-Federal entities to use their space-related facilities . . . if [the agency] determines that," among other things, "equivalent commercial services are not available on reasonable terms." *Id.* § 508(a), (4), 106 Stat. at 5128 (codified at 15 U.S.C. § 5807(a), (4) (1994)).

The statute did not define "space-related facilities," though it defined "space transportation infrastructure" to encompass "facilities . . . including . . . launch support facilities." *Id.* § 502(12), 106 Stat. at 5123–24 (codified at 15 U.S.C. § 5802(12) (1994)). "Launch support facilities," in turn, were defined as "facilities located at launch sites or launch ranges that are required to support launch activities." *Id.* § 502(7), 106 Stat. at 5123 (codified at 15 U.S.C. § 5802(7) (1994)). The statute did not define "launch activities," but it retained the Commercial Space Launch Act's definition of "launch services" as

---

[1] The Commercial Space Launch Act of 1984 and its amendments were ultimately repealed by Pub. L. No. 103-272, § 7(b), 108 Stat. 745, 1394, 1397.

"activities involved in the preparation of a launch vehicle and its payload for launch and the conduct of a launch." *Id.* § 502(6), 106 Stat. at 5123 (codified at 15 U.S.C. § 5802(6) (1994)).[2]

### iii.    National Defense Authorization Act for Fiscal Year 2024

The National Defense Authorization Act for Fiscal Year 2024 gave the military "Special authority for provision of space launch support services." Pub. L. No. 118-31, tit. XVI, § 1603, 137 Stat. 136, 584 (codified at 10 U.S.C. § 2276a).    Under this law, "The Secretary of a military department may support . . . commercial space launch capacity on any domestic real property under the control of the Secretary through the provision of space launch support services."    10 U.S.C. § 2276a(a).    "The Secretary of a military department may enter into a contract or other transaction with one or more commercial entities that intend to conduct space launch activities on a military installation under the jurisdiction of the Secretary." *Id.* § 2276a(b)(1).  "Under such a contract or agreement, the Secretary may agree to provide to the commercial entity supplies, services, equipment, and construction needed for commercial space launch." *Id.*  "Space launch" is defined to include "all activities, supplies, equipment, facilities, or services supporting launch

---

[2] In 2010, Congress repealed the provision concerning "Use of Government Facilities" and the relevant definitions, and reenacted them as 51 U.S.C. §§ 50501 & 50504, where they currently appear.  Pub. L. No. 111-314, subtit. V, 124 Stat. 3328, 3404–07 (reenactment), 3446 (repeal).

preparation, launch, reentry, recovery, and other launch-related activities for both the payload and the space transportation vehicle." *Id.* § 2276a(c)(1).

**B.    Procedural Background**

Launch on Demand LLC filed suit in April 2023.   ECF No. 1.   Its complaint was dismissed without prejudice, ECF No. 22, but later reinstated, ECF No. 25, and then amended as of right, ECF No. 32.   The amended complaint contained five counts, three under the APA and two under the Lanham Act.  *Id.* ¶¶ 73–138.  The federal government moved to dismiss the APA claims for lack of standing and failure to join indispensable parties, and moved to dismiss the Lanham Act claims as legally insufficient under Rule 12(b)(6).  ECF No. 42.  The Court dismissed the Lanham Act claims without prejudice on the grounds that one alleged statement was not commercial in nature, and the other alleged statements were not false or misleading, but denied the motion as to the APA claims.  ECF No. 60.  Launch on Demand then filed a second amended complaint, with the federal government's consent.  ECF No. 86 ("2d Am. Compl.").

**C.    Summary of Allegations**

Launch on Demand is a "commercial provider of Day-of-Launch Services," *id.* ¶ 6, including "flight safety analysis, airspace integration, launch collision avoidance, launch communications, long range optics, and telemetry," *id.* at 2.  It alleges that "the United States Space Force is competing with

Launch on Demand and providing day-of-launch services . . . to commercial space launches," in violation of an "unequivocal congressional mandate" set out in 51 U.S.C. § 50504(a)(1)(D). *Id.* Launch on Demand contends that the Space Force is "statutorily barred from providing Day-of-Launch Services to commercial users . . . unless it 'determines that . . . equivalent commercial services are not available on reasonable terms.'" *Id.* ¶¶ 123, 137, 149 (quoting 51 U.S.C. § 50504(a)(1), (D) (second alteration in original)).

Launch on Demand pleads three APA claims, each of which "seeks review of the Space Force's decision to provide Day-of-Launch Services to the scheduled launches listed in Exhibit A without complying with its statutory obligations." *Id.* ¶¶ 120, 133, 147 (emphasis deleted). Exhibit A lists private space launches scheduled to occur in 2023 and 2024. ECF No. 86-1. The first APA claim asks the Court to set aside the challenged decisions under 5 U.S.C. § 706(2), 2d Am. Compl. ¶ 123, while the second claim seeks to compel agency action under 5 U.S.C. § 706(1), 2d Am. Compl. ¶ 138. The third APA claim seeks declaratory relief on the same legal theories. *Id.* ¶ 150.

Launch on Demand also pleads two claims for false "commercial advertising or promotion" in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). These claims also rest on the proposition that the Space Force is "statutorily barred from providing Day-of-Launch Services to commercial users . . . unless it 'determines that . . . equivalent commercial services are not

available on reasonable terms.'" 2d Am. Compl. ¶¶ 160, 172 (quoting 51 U.S.C. § 50504(a)(1)(D) (second alteration in original)). The first Lanham Act claim seeks money damages, *id.* ¶¶ 157–68, and the second seeks injunctive relief, *id.* ¶¶ 169–84.

## LEGAL STANDARD

Moot claims are "nonjusticiable and Article III courts lack jurisdiction to entertain" them. *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1281 (11th Cir. 2004). Questions of mootness are therefore appropriately dealt with on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007).

Under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## ARGUMENT

**1.    The APA claims should be dismissed.**

**A.    The APA claims are moot.**

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000) (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)); *accord Graham v. Attorney Gen., State of Georgia*, 110 F.4th 1239, 1244 (11th Cir. 2024). "[I]f a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs Street Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004). "When events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." *Florida Ass'n of Rehab. Facilities*, 225 F.3d at 1217; *accord Graham*, 110 F.4th at 1244.

Launch on Demand brings three claims under the APA, which provides for judicial review of "final agency action." 5 U.S.C. § 704; *see Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1239 (11th Cir. 2003) ("[W]here

an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review.")  Each of the APA claims asks this Court to "review . . . the Space Force's decision to provide Day-of-Launch Services to the scheduled launches listed in Exhibit A."  2d Am. Compl. ¶¶ 120, 133, 147 (emphasis deleted).  Exhibit A lists space launches scheduled for 2023 and 2024.  ECF No. 86-1.  The latest launch was set to occur in August 2024.  *Id.* at 4.  Although Launch on Demand amended its complaint last month, the company does not challenge "the Space Force's decision to provide Day-of-Launch Services" to any future launches.

Federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong."  *Spencer v. Kemna*, 523 U.S. 1, 18 (1998); *accord United States v. Alhindi*, 124 F.4th 869, 875 (11th Cir. 2024).  Even if Space Force decisions to provide services to past launches were illegal, as the APA claims allege, any disagreement over the provision of those services "no longer presents a live controversy with respect to which the court can give meaningful relief."  *Florida Ass'n of Rehab. Facilities*, 225 F.3d at 1217; *Ethredge*, 996 F.2d at 1175.  The Court cannot "set aside" Space Force decisions to provide services to past launches, 2d Am. Compl. ¶ 123, nor "compel" the Space Force to make a particular determination

"prior to deciding to provide the Space Force's own space services" to those launches, *id.* ¶¶ 138, 150(ii).

Launch on Demand's APA claims are therefore moot and should be dismissed. *See Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1179 (9th Cir. 2010) ("Because the shipment at issue has already been completed— the ship has in this case literally sailed—[Plaintiff's] claim . . . is moot as well.").

## B. The Space Force has new statutory authority to provide services to commercial launches on its property.

Launch on Demand may argue that its claims come within the "exception to the mootness doctrine for cases that are 'capable of repetition, yet evading review.'" *Hall v. Sec'y, Alabama*, 902 F.3d 1294, 1297 (11th Cir. 2018) (quoting *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911)). That exception applies "where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1343 (11th Cir. 2014). But even if the APA claims would otherwise come within that exception—which the government does not concede—a change in the law has rendered them largely incapable of repetition.

The National Defense Authorization Act for Fiscal Year 2024 gave the Space Force and other military departments "Enhanced Authority to Increase Space Launch Capacity through Space Launch Support Services." Pub. L. No. 118-31, tit. XVI, § 1603, 137 Stat. at 584. Under the terms of this "Special authority," 10 U.S.C. § 2276a, the Space Force "may support . . . commercial space launch capacity on any domestic real property under [its] control . . . through the provision of space launch support services," *id.* § 2276a(a), and may "provide to the commercial entity supplies, services, equipment, and construction needed for commercial space launch," *id.* § 2276a(b)(1). There is no requirement that the Space Force determine whether equivalent commercial services are available on reasonable terms before providing space launch support services under this special, enhanced authority.

This new statutory authority clearly authorizes the Space Force to "provid[e] Day-of-Launch Services . . . to 100% of all U.S. commercial launches from Space Force locations" without assessing the availability of equivalent commercial services. 2d Am. Compl. ¶ 57; *see id.* at 2–3 (alleging that "the Space Force . . . is currently scheduled to serve 100% of all commercial launches from Space Force locations in violation of federal law"). Where a party contends that "a controversy arising under the old statutory provision will be capable of repetition under the new one," it must show that "the new statutory provision has manifestly not changed the law" in order to escape mootness. *In*

*re Bunker Ltd. P'ship*, 820 F.2d 308, 312 (9th Cir. 1987).  Launch on Demand cannot do so here.

The APA claims challenging the provision of Day-of-Launch Services to commercial launches from Space Force locations are therefore entirely moot. Any disagreement over the provision of those services to past launches "no longer presents a live controversy with respect to which the court can give meaningful relief."  *Florida Ass'n of Rehab. Facilities*, 225 F.3d at 1217 (quoting *Ethredge*, 996 F.2d at 1175).  And Launch on Demand cannot avoid mootness by pointing to the possibility of repetition, because the Space Force is now clearly authorized to provide services without assessing commercial alternatives under the terms of its special, enhanced authority.  10 U.S.C. § 2276a; *Colorado Wild, Inc. v. U.S. Forest Serv.*, 2008 WL 4453426, at *5 (D. Colo. Sept. 30, 2008) (explaining that "due to a change  in the law, Plaintiff's claim . . . is not capable of repetition"); *see Collins v. Hoke*, 705 F.2d 959, 963 (8th Cir. 1983) (issue of whether district court erred in holding that county had no authority to provide for placement in care facility mooted by passage of statute granting county this authority).

## C.    Launch on Demand has not adequately alleged a violation of 51 U.S.C. § 50504(a)(1)(D).

If the APA claims, or any portion of them, escape dismissal for mootness, they should be dismissed under Rule 12(b)(6).  As discussed above, each of the

claims rests on the argument that the Space Force is "statutorily barred from providing Day-of-Launch Services to commercial users . . . unless it 'determines that . . . equivalent commercial services are not available on reasonable terms.'"  2d Am. Compl. ¶¶ 123, 137, 149 (quoting 51 U.S.C. § 50504(a)(1)(D) (second alteration in original)).  But that is not what the statute says.

Section 50504 addresses the "Use of Government Facilities" by private entities, and not the provision of public services to such entities.  51 U.S.C. § 50504.  The statute describes the conditions under which federal agencies may "allow non-Federal entities to use their space-related facilities."  *Id.* § 50504(a); *see* Pub. L. No. 102-588, tit. V, § 501(7), 106 Stat. at 5122 (finding that "private sector use of available Government facilities on a reimbursable basis contributes to a stronger commercial space sector").[3]  Agencies relying on this authority may only allow the use of their "space-related facilities" if "equivalent commercial services are not available on reasonable terms."  51 U.S.C. § 50504(a)(1), (D).  The statute thus contemplates that "facilities" provide "services," but it does not restrict the government's ability to service private space launches.  It only limits the private "use" of federal "facilities."

An earlier statute required the federal government to "consider the commercial availability, on reasonable terms and conditions, of substantially

---

[3] Congress made this finding when it enacted the provision that became 51 U.S.C. § 50504.  *See supra* at 4–5 & n.2.

equivalent . . . launch services from a domestic source" before authorizing "the acquisition . . . by the private sector . . . of launch services . . . of the United States." 49 U.S.C. app. § 2614(a) (1988). But Congress chose to remove that limitation on the federal provision of "launch services" and replace it with a limitation on the private "use" of federal "space-related facilities" when it enacted what became Section 50504 and superseded the earlier statute.

To state a claim for a violation of 51 U.S.C. § 50504, as relevant here, a plaintiff must therefore allege 1) that an agency has allowed the private "use" of one of its "space-related facilities" 2) without determining that "commercial services" "equivalent" to those provided by the facility are "not available on reasonable terms." Launch on Demand has not stated such a claim. The Second Amended Complaint does not contend that the Space Force improperly authorized private "use" of its "space-related facilities," 51 U.S.C. § 50504(a), but rather that it improperly "provided Day-of-Launch Services" to commercial launches, instead of allowing Launch on Demand to do so. 2d Am. Compl. ¶¶ 57, 66, 120, 133, 147 (seeking "review of the Space Force's decision to provide Day-of-Launch Services to the scheduled launches listed in Exhibit A").

Section 50504 does not limit the federal government's ability to provide services to commercial space launches, even if providing those services requires the government to make use of its own space-related facilities. The statute only limits the private use of those facilities. Because Launch on

- 15 -

Demand has not alleged unlawful "non-Federal . . . use" of federal "space-related facilities," it has not stated a claim for a violation of 51 U.S.C. § 50504, and any APA claims that are not moot must therefore be dismissed under Rule 12(b)(6).

## 2.    The Lanham Act claims should be dismissed.

### A.    Elements of the claim and pleading standards

The Lanham Act, as relevant here, imposes civil liability on "[a]ny person who . . . in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . . of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1), (B).  As this Court has explained, a claimant "must be able to point to at least one challenged statement that satisfies all [of the] Lanham Act requirements; . . . a Lanham Act claimant may not mix and match statements, with some satisfying one Lanham Act element and some satisfying others."   ECF No. 60 at 12–13 (quoting *Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 299 (4th Cir. 2017)). And as the Court has noted, "there is a split of authority in the Eleventh Circuit regarding whether the heightened pleading standard of Federal Rule of Civil Procedure 9(b) or the general pleading standard of Rule 8 applies to Lanham Act false advertising [or promotion] claims."  *Id.* at 13.  Here, as before, "the

Court need not decide which standard to apply because . . . Plaintiff's allegations are insufficient to survive either." *Id.*

But if the Court reaches the question, it should apply Rule 9(b) to the Lanham Act claims, which sound in fraud. Claims that "sound in fraud" must satisfy Rule 9(b), even if the specific cause of action is not termed "fraud." *Symphony, LLC v. Romeu*, 2019 WL 2107288, at *2 (S.D. Fla. Mar. 13, 2019) (collecting cases). A case sounds in fraud, for example, where the claim is that "[d]efendants made false and misleading representations of material facts," which the plaintiffs or others relied on their detriment. *Wyndham Vacation Ownership, Inc. v. U.S. Consumer Attorneys, P.A.*, 2019 WL 7837887, at *4 (S.D. Fla. July 3, 2019) (holding that Rule 9 applied to Lanham Act false advertising claim). Other courts applying Rule 9(b) to false advertising or promotion claims have reached similar conclusions. *See, e.g.*, *Williams-Sonoma, Inc. v. Wayfair Inc.*, 2023 WL 371035, at *2 (D. Mass. Jan. 24, 2023) (applying Rule 9 to Lanham Act claim alleging false advertising where claim involved false or misleading statements); *Rovanco Piping Sys., Inc. v. Perma-Pipe Int'l Holdings, Inc.*, 2022 WL 683690, at *7 (N.D. Ill. Mar. 8, 2022) (allegations that false or misleading representations under the Lanham Act that worked to the detriment of plaintiff were subject to Rule 9) (citing *Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014)); *N. Bottling Co. v. Henry's Foods, Inc.*, 474 F. Supp. 3d 1016, 1028 (D.N.D. 2020) (Rule 9(b) applies because "false

- 17 -

advertising under the Lanham Act" . . . "generally require[s] some sort of misrepresentation," so Rule 9 applies); *ARF Dashnaksutyun, W. USA v. Armenian Revolutionary Fed'n WUSA, Inc.*, 2023 WL 4155366, at *7 (C.D. Cal. May 26, 2023).

### B.    Lanham Act allegations

The Second Amended Complaint alleges the following statements in support of its renewed Lanham Act claims:

1)    Statements by Paul Rosati, a Space Force official, to the effect that the Space Force would conduct flight safety analysis for launches from Space Force property, 2d Am Compl. ¶¶ 71–72, 76, 79–80;

2)    Unspecified statements by Col. Meredith Beg "suggesting that commercial launch users must obtain . . . weather forecasting, telemetry, and range services" from the Space Force when launching from Space Force property, *id.* ¶ 82;

3)    A statement celebrating the Space Force's "strong partnerships with industry leaders" and commitment to "ensuring a secure and resilient space domain, enabling seamless access to orbit and beyond," and "highlight[ing] [its] commitment to the acceleration of #innovation and assured access to space," *id.* ¶ 84;

4)    Statements in standard template agreements or forms that the Space Force will provide various services to commercial launches, *id.* ¶¶ 88–107;

5)    Statements about the need to contact Space Force offices to arrange commercial launches from Space Force property, *id.* ¶¶ 109–11; and

6)    Statements on a website promoting Space Force services, *id.* ¶¶ 113–14.

On the basis of these allegations, Launch on Demand claims monetary damages under the Lanham Act in Count IV, *id.* ¶¶ 157–68, and seeks injunctive relief in Count V, *id.* ¶¶ 169–84. Both Lanham Act counts should be dismissed under Rule 12(b)(6).

## C.    Launch on Demand has not alleged any false or misleading descriptions or representations of fact.

Launch on Demand's Lanham Act claims rest on the same proposition as its APA claims: that the Space Force is "statutorily barred from providing Day-of-Launch Services to commercial users . . . unless it 'determines that . . . equivalent commercial services are not available on reasonable terms.'"  2d Am. Compl. ¶¶ 160, 172 (quoting 51 U.S.C. § 50504(a)(1)(D) (second alteration in original)).  From that premise, Launch on Demand concludes that Space Force statements "to commercial users that to launch from a federal facility,

they have to retain the Space Force to provide the Day-of-Launch Services," *id.*
¶¶ 162, 174, are false and/or misleading, because in fact the Space Force is
prohibited from providing Day-of-Launch Services if equivalent commercial
services are available on reasonable terms.  Because the Lanham Act claims
rest on the same legal theory as the APA claims, they should be dismissed for
similar reasons.

    *First*, the Space Force is clearly authorized to provide services to space
launches from its own property without assessing the availability of
commercial alternatives.  10 U.S.C. § 2276a; *see supra* at 11–13.  And so even
if the Space Force is "servicing 100% of all commercial launches in the United
States from Space Force locations," as Launch on Demand alleges, 2d Am.
Compl. ¶¶ 165, 177, statements that it will do so are not false or misleading
factual descriptions or representations within the meaning of the Lanham Act,
15 U.S.C. § 1125(a)(1)(B).

    *Second*, even as to launches that took place before the enactment of the
Space Force's "Special authority for provision of space launch support services"
in December 2023, 10 U.S.C. § 2276a, or launches that do not occur on Space
Force property, *see id.* § 2276a(a), the Space Force is not and was never
"statutorily barred from providing Day-of-Launch Services to commercial
users." 2d Am. Compl. ¶¶ 160, 172.  The statutory provision to which Launch
on Demand cites for that proposition only limits the private "use" of federal

"space-related facilities." 51 U.S.C. § 50504(a)(1); *see supra* at 13–16. It has never limited the Space Force's ability to provide Day-of-Launch Services. And so even if true statements that the Space Force will provide Day-of-Launch Services to commercial space launches could be false or misleading under the Lanham Act (which the government does not concede), Launch on Demand has not plausibly alleged that it was ever unlawful for the Space Force to provide those services. And because all of the Lanham Act claims depend on that proposition, they must be dismissed in their entirety.

*Third*, the alleged statements are not false or misleading on their own terms. Paul Rosati's alleged statements that the Space Force would conduct a flight safety analysis for private launches from Space Force property, 2d Am Compl. ¶¶ 71–72, 76, 79–80, simply reflect the statutory requirement to ensure that private "use" of federal "space-related facilities" "is consistent with public safety." 51 U.S.C. § 50504(a)(1), (E). The statement celebrating the Space Force's "partnerships with industry leaders" and commitment to "ensuring a secure and resilient space domain," 2d Am Compl. ¶ 84, did not make any false or misleading factual descriptions or representations. Nor did the internet publication including the statements that "We pride ourselves on providing world-class service and assured access to space!" and "Our plan is to meet the increase in demand head on while continuing to look for efficiencies and partner with launch customers to support their needs." *Id.* ¶¶ 113–14. This

Court has already correctly concluded that statements about the need to contact Space Force offices to arrange commercial launches from Space Force property, *id.* ¶¶ 109–11, were not sufficient allegations of false or misleading factual descriptions or representations.  ECF No. 60 at 17.

Statements in standard template agreements or forms that the Space Force will provide various services to commercial launches, 2d Am Compl. ¶¶ 88–107, are not sufficient allegations of false or misleading factual descriptions or representations, either.  Many of the statements to which Launch on Demand points are simply assumptions of contractual duties: the Space Force "shall . . . Determine criteria for flight termination action," *id.* ¶ 88, "shall . . . Provide technical guidance and support," *id.* ¶ 89, "shall . . . Provide system and mission constraint evaluation and weather forecasting services," *id.* ¶ 90, and "shall provide system and mission constraint evaluation," *id.* ¶ 102.  Another statement is a definition of the "Launch Services" covered by the contract in question.  *Id.* ¶ 105.  A "Sample Program Introduction for Commercial Customers" similarly describes the services that the Space Force will provide: "support . . . as required," *id.* ¶ 92, or "direct support," *id.* ¶ 93.  It also includes draft representations for the customer to make to the Space Force, *id.* ¶¶ 93–95, which are not false or misleading factual descriptions or representations by the Space Force.

Many other statements, like those of Mr. Rosati discussed above, simply reflect the statutory requirement to ensure that private "use" of federal "space-related facilities" "is consistent with public safety," 51 U.S.C. § 50504(a)(1), (E). 2d Am. Compl. ¶¶ 97–104 & 106; *see, e.g., id.* ¶ 97 (stating that the Space Force "will need to do an analysis to determine the acceptable range of launch azimuths . . . and risks for launches"); *id.* ¶ 98 ("Explosive Safety Sitting Package is required to be developed by" the Space Force); *id.* ¶ 100 (stating that the Space Force "needs to . . . conduct a Preliminary Flight Safety Analysis"); *id.* ¶ 101 (stating that the Space Force "will provide airspace, offshore and rail clearance . . . in coordination with the [Space Force] Launch Safety office"); *id.* ¶ 103 ("The [Space Force] Safety Office is responsible for initiating and/or conducting a number of safety-related analyses or studies . . . ."); *id.* ¶ 104 ("The [Space Force] Commander has responsibility for flight safety" on commercial launches from a Space Force location.).

Finally, the allegation that "Colonel Meredith Beg . . . made false and misleading statements," *id.* ¶ 82, does not specify the "precise statements" in question as Rule 9(b) requires, *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 876 (11th Cir. 2023). The allegations made "[u]pon information and belief" are inadequate for the same reason. 2d Am Compl. ¶ 86.

All of these allegations are legally insufficient, and none of them show that the Space Force is "misrepresenting to commercial users that to launch

from a federal facility, these commercial users must retain the Space Force to provide Day-of-Launch Services," as Launch on Demand contends. *Id.* at 3. The Lanham Act claims must therefore be dismissed under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, the Second Amended Complaint should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

LAUREN A. WETZLER
Deputy Director

*/s/ James Bickford*
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

Date: April 4, 2025

## LOCAL RULE 3.01(g) CERTIFICATION

In compliance with Local Rule 3.01(g), undersigned counsel hereby certifies that he conferred with opposing counsel by telephone on April 3, 2025.  Plaintiff opposes this motion in its entirety.

*/s/James Bickford*
James Bickford