UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.: 6:23-cv-00789-CEM-RMN

LAUNCH ON DEMAND LLC,

    Plaintiff,

v.

THE UNITED STATES OF AMERICA,

    Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Plaintiff, Launch On Demand LLC ("Launch On Demand" or "Plaintiff"), files this response to Defendant the United States of America's ("Defendant") Motion to Dismiss (the "Motion", Doc. 93) the Second Amended Complaint (the "SAC").

## I. INTRODUCTION

This Court has already ruled that Plaintiff adequately pleads *an ongoing procedural injury* under the APA based on the Space Force's unlawful displacement of commercial Day-of-Launch Services providers. (Doc. 60 at 7–9). Despite this unequivocal holding, Defendant returns with meritless APA arguments that are plainly at odds with Eleventh Circuit precedent, disregard this Court's prior order, and defy settled principles of statutory construction.

Defendant's Lanham Act arguments fare no better. Defendant recycles the same flawed statutory theories, ignores the SAC's detailed factual allegations, and fails

1

to address the essential elements of the cause of action. The Motion lacks merit at every level and should be denied in its entirety.

## II. PERTINENT PROCEDURAL BACKGROUND

Plaintiff filed this action on April 28, 2023 (Doc. 1), alleging that Defendant is unlawfully providing space launch services ("Day-of-Launch Services") without first determining the unavailability of equivalent commercial alternatives, in violation of 5 U.S.C. § 500 *et seq.* (the "APA claim"), and falsely promoting those services as exclusive to the Space Force, in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*

On September 14, 2023, Plaintiff filed an Amended Complaint as of right pursuant to Fed. R. Civ. P. 15(a) (the "FAC") (Doc. 32). On October 12, 2023, Defendant moved to dismiss the FAC in its entirety (Doc. 42).

On September 30, 2024, this Court ruled on Defendant's first motion to dismiss. (Doc. 60) (the "Order"). The Order dismissed Plaintiff's Lanham Act claims without prejudice but upheld the APA claim, recognizing that Plaintiff alleged an ongoing procedural injury. *Id.* at 8–9 (citing *Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, 100 F.4th 1349 (11th Cir. 2024)).

On March 4, 2025, Plaintiff filed a consented Second Amended Complaint (Docs. 86 & 87), substantially bolstering its Lanham Act allegations while preserving the APA claims the Court had already adjudicated and upheld.

On April 4, 2025, Defendant filed the present Motion (Doc. 93), seeking dismissal of both the previously adjudicated APA claims and the realleged Lanham Act allegations. This Response follows accordingly.

## III.   ARGUMENT

A. <u>The APA Claims Remain Actionable and Well-Pled</u>

   i. **Mootness is Inapposite Here Because Plaintiff Has Expressly Pled an Ongoing Procedural Injury**

Defendant first argues that the APA claims should be dismissed as moot. According to Defendant, since the 44 launches illustrated in Exhibit A of the SAC already took place, this Court cannot provide any relief to Plaintiff under the APA. (Doc. 93 at 9–11). This argument is legally baseless. First, it is foreclosed by Eleventh Circuit precedent which this Court expressly cited in its 2024 Order. Second, it selectively ignores well-pled allegations in the SAC of an ongoing procedural injury and prospective relief. Thus, the Court should reject it outright.

A party has a "heavy burden" to establish a case is moot. *Michigan v. Long*, 463 U.S. 1032, 1042 n.8 (1983) (citation omitted). This is so because mootness applies "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Haynes v. Trader Joe's Co.*, 2018 WL 10883768, at *2 (S.D. Fla. Apr. 19, 2018) (citation omitted).

At the outset, Defendant's mootness argument in this case is plainly meritless, as it contradicts binding Eleventh Circuit precedent that has rejected this very same argument in the context of procedural rights. In *Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, 100 F.4th 1349 (11th Cir. 2024), the government argued that its issuance of a construction permit without full environmental review could not be meaningfully

3

redressed because the construction at issue had already concluded. *Id*. at 1358. The Court rejected this "mootness contention," noting that procedural violations are redressable[1] under the APA when the procedural injury is ongoing, and there is "some possibility" that a ruling will prompt the agency to reconsider its injury-inducing decision-making process. *Id*. 1357–58. Indeed, the Court noted that redressability in this context "is [ ] obvious," and that the government's focus on the completion of the underlying construction "misunderstands what the [plaintiff] is seeking *in this action*—[procedural compliance]." *Id*. (emphasis in original).

Here, too, the inapplicability of mootness is "obvious." Plaintiff is not challenging past launches for their own sake, but rather Defendant's ongoing failure to comply with the procedural safeguards of 51 U.S.C. § 50501 *et seq*. That failure is the core of this APA action. The violation is not tied to any single launch—it is systemic and ongoing. The relief sought targets this continued noncompliance and seeks to halt Defendant's unlawful displacement of domestic Day-of-Launch Services providers. As in *Center*, the procedural injury remains live, and meaningful relief is available. By definition, this defeats mootness. *See Mingkid v. U.S. Atty. Gen.*, 468 F.3d 763, 768 (11th Cir. 2006) (finding that the government "misconstrues the applicability of the mootness doctrine[,]" because a favorable ruling would "leave[ ] [plaintiffs] in [a] better position than they would be in without our relief"); *Fla. Pub. Int. Rsch. Grp.*

---

[1] Any distinction between mootness and redressability in this context is a matter of semantics. As the Eleventh Circuit has noted, these arguments are "alternative formulations" of the same claim: that because the subject of agency action has culminated, there is nothing for the Court to cure. *See Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1086 n. 17 (11th Cir. 2004).

*Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1087 (11th Cir. 2004) ("[T]he injuries alleged by plaintiffs go beyond those caused by [the completed agency action]. . . . "[G]oing forward, the potential for real and concrete injury continues, and injunctive relief may be appropriate. Simply put, the controversy has not been mooted").

Defendant's mootness argument is also overly self-serving, as it selectively ignores the SAC's clear and repeated allegations of ongoing harm and prospective relief. *See*, *e.g.*, (Doc. 86 ¶¶ 2–3) (stating that the suit seeks to enjoin the Space Force from servicing commercial launches *as currently scheduled* and to compel the Space Force to *comply* with certification requirements going forward); *id*. ¶¶ 56–57 (stating that the Space Force *is currently* scheduled to provide Day-of-Launch Services for 100% of commercial launches departing from Cape Canaveral and Vandenberg Station in breach of federal law); *id*. ¶¶ 61–65 (alleging that each launch listed in Exhibit A occurred without the required certifications, and that this pattern continues); *id*. ¶ 65 (evidencing that commercial launchers are treated as a funding source by the Space Force, underscoring the ongoing competitive harm to domestic providers); *id*. ¶ 108 (detailing in Exhibit B hundreds of commercial launches at Cape Canaveral and Vandenberg scheduled through early 2025, all of which received Day-of-Launch Services from the Space Force without the required certifications); *id*. ¶¶ 121–22, 125–26 (alleging continuing irreparable harm and loss of business opportunities due to the Space Force's ongoing unlawful provision of Day-of-Launch Services).

In sum, Defendant's mootness argument is baseless: it contradicts binding, on point Eleventh Circuit precedent, disregards this Court's prior Order, and ignores the

5

SAC's clear allegations of ongoing procedural injury and prospective relief. The Court should reject it outright.

### ii. The Enactment of Title 10 U.S.C. § 2276a. Did Not Alter the Mandatory Framework of Title 51 Governing Commercial Space Competitiveness

Having established that mootness is inapposite in this case, Defendant's next argument should be taken for what it really is: a statutory claim that defies long-settled principles of statutory construction and attempts to hide behind the "mootness" label to avoid the procedural bar of Fed. R. Civ. P. 12(g). *See* 9–10 *infra*.[2] In essence, Defendant argues that the addition of a new section into 10 U.S.C., Subtitle A (General Military Law) on December 22, 2023, somehow displaced the noncompetition and certification requirements codified in 51 U.S.C. §§ 50504 & 50702. *See* (Doc. 93 at 12–13). Defendant's "change in the law" argument is meritless. As a cursory review of the actual provision reveals, nothing in the *plain text* of 10 U.S.C. § 2276a.—which is phrased in *permissive* terms and adds *nothing* to the discretionary authority already granted by § 2276—purports to repeal or override the *mandatory* provisions of Title 51. To the contrary, as evidenced by 10 U.S.C. § 2276's express incorporation of Title 51 concepts, both of these frameworks are meant to coexist with, and complement, one another.

---

[2] If the case is not moot, "[a]n inquiry into whether an exception to mootness applies—such as whether the conduct is likely to recur in the future—would thus be misplaced and unnecessary." *See Smith v. Allen*, 502 F.3d 1255, 1268 n.7 (11th Cir. 2007) overruled on other grounds by *Hoever v. Marks*, 993 F.3d 1353 (11th Cir. 2021).

As the Supreme Court has noted, courts "approach federal statutes touching on the same topic with a 'strong presumption' they can coexist harmoniously. Only by carrying a 'heavy burden' can a party convince us that one statute 'displaces' a second. Where two laws are merely complementary—as is undisputedly the case here—our duty lies not in preferring one over another but in giving effect to both." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024) (cleaned up).

This basic canon of statutory construction is dispositive here. Other than parroting the phrase "Special Authority" found in the subtitle of 10 U.S.C § 2276a., Defendant does nothing to identify *any language* in the operative provision that actually displaces the noncompetition and certification mandates of Title 51. Instead, Defendant posits that, because the new provision *does not say* anything about certification of domestic nonavailability, it must eliminate this requirement from the law. Of course, asking courts to enforce what statutes *do not say*—rather than what they plainly do—turns statutory interpretation on its head. *See Greater Birmingham Ministries v. Sec'y of State for Alabama*, 105 F.4th 1324, 1333 (11th Cir. 2024) (rejecting the argument that later-enacted statute silently displaced an earlier one, and noting that statutory silence does not amend preexisting statutory provisions).

Defendant's position is further undermined by the fact that unlike Title 51, 10 U.S.C. § 2276a. is written in permissive, not mandatory language. *Compare* 51 U.S.C. § 50504(a)(1)(D) (allowing for the provision of Day-of-Launch Services *if* "the agency head determines that" "equivalent commercial services are not

available"), and § 50702(d)(4) (the duties of the director *shall include* "ensuring that the United States Government does not compete with United States commercial providers"), and § 50913(a)(2) (the government *shall* "consider the commercial availability . . . of substantially equivalent launch property or launch services), *with* 10 U.S.C. § 2276a.(a) & (b) (noting that the Secretary "may support," "may enter into," "may agree to provide," and "may include"). *See MSPA Claims v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 773–74 (11th Cir. 2020) ("'[M]ay' cannot, by any rendering, mean 'must.' When a statute uses the word 'may,' it 'implies that what follows is a permissive rule.'"); *Jama v. Immigr. & Customs*, 543 U.S. 335, 346 (2005) ("The word 'may' customarily connotes discretion. That connotation is particularly apt where, as here, 'may' is used in contraposition to the word 'shall[.]'") (cleaned up).

Defendant's theory also flies in the face of other provisions within Title 10 itself, including § 2276(b)(2)(A)(iii), which plainly states that the Secretary may provide support *and services* to commercial entities *only if* doing so "does not compete with the commercial space activities of other covered entities[.]" Likewise, § 2276(g) expressly adopts the definitions set forth in 51 U.S.C. § 50501, including that of "launch support facilities,"[3] further confirming that the limitations Title 51 places on Defendant's ability to compete with commercial providers of Day-of-Launch Services are fully embraced—not displaced—by Title 10.

---

[3] A definition attuned with the reality that the inherent purpose of launch facilities is to provide launch services: "facilities located at launch sites or launch ranges that are required to support launch activities, including launch vehicle assembly, launch vehicle operations and control, communications, flight safety functions, and payload operations, control, and processing." 51 U.S.C. § 50501(7) (West).

In sum, Defendant's "change in the law" theory collapses under basic principles of statutory interpretation. Title 10 and Title 51 are not in conflict—they are complementary, and nothing in § 2276a.'s plain text alters or repeals the mandatory protections Congress embedded in Title 51. Indeed, Defendant's "change in the law" theory is little more than an attempt to sidestep the procedural bar that any Title 10-based argument would face at this stage under Fed. R. Civ. P. 12(g). The enactment of 10 U.S.C. § 2276a. added nothing to the discretionary authority already conferred by § 2276—let alone to repeal the requirements of Title 51. As even the cases cited by Defendant make clear, a genuine "change in the law" occurs when the statute that forms the basis of the suit is amended during the pendency of the case. That is plainly not what happened here. [4] *See Matter of Bunker Ltd.*, 820 F.2d 308, 312 (9th Cir. 1987).

### iii. Defendant's 51 U.S.C. § 50504 Argument is Both Procedurally Barred and Substantively Meritless

Defendant's final APA-related argument suffers from two fatal defects. First, it is procedurally barred under Fed. R. Civ. P. 12(g), as it could—and should—have been raised in its prior Rule 12 motion. Second, the argument lacks merit. It rests on misstatements of statutory history, disregards the statute's plain text and structure, and ignores years of agency interpretation and practice that directly undermine Defendant's unsubstantiated reading.

---

[4] The only "special" and "new" aspect of 10 U.S.C. § 2276a. is that, for the first time, it authorizes the Space Force to recover **indirect costs** from its commercial customers—not that it implied a repeal of Title 51's noncompetition and certification requirements. *See* https://www.noozhawk.com/u-s-space-force-to-use-new-law-to-charge-launch-customers-for-indirect-costs-of-wear-and-tear/.

As a threshold matter, Defendant's successive Rule 12(b)(6) argument is procedurally improper. Rule 12(g)(2) bars a party from making a second Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). This consolidation rule exists to prevent piecemeal litigation and unnecessary delay at the pleading stage. *See Doe v. Vali Hosp. LLC*, 2024 WL 3342220, at *2 (M.D. Fla. Feb. 27, 2024) (Norway, Mag. J.). Defendant had the opportunity to raise this statutory argument in its first Rule 12 motion, but chose not to. That omission forecloses the argument now. *See id*.

In any event, Defendant's claim that § 50504 does not apply to the Space Force's provision of Day-of-Launch Services misrepresents both the statute's history and its text. First, contrary to Defendant's suggestions, 49 U.S.C. app. § 2614 is not the legal predecessor to 51 U.S.C. § 50504, nor was § 2614's express reference to "launch services" ever removed from the law. *See* (Doc 93 at 14–15). Proper reading of the relevant statutory history reveals that § 2614 was recodified without substantive change as 49 U.S.C. § 70111 in 1994 (Pub. L. No. 103-272 at 591),[5] and then as 51 U.S.C. § 50913 in 2010 (Pub. L. No. 111-314 at 3441),[6] where it remains today. Contrary to Defendant's claim, the clause still ***requires*** the Secretary to "consider the commercial availability on reasonable terms of substantially equivalent launch property ***or launch services*** . . . from a domestic source[.]" 51 U.S.C.A. § 50913(a)(2) (emphasis added).

---

[5] *See* https://www.govinfo.gov/app/details/STATUTE-108/STATUTE-108-Pg745.
[6] *See* https://www.govinfo.gov/app/details/PLAW-111publ314.

Defendant's reading of § 50504 also ignores the plain language of the statute, contradicts its overall structure and purpose, and is at odds with decades of agency interpretation and operational policy. The statutory text is unequivocal. Title 51 allows federal agencies to provide space launch facilities to non-Federal entities only if "the appropriate agency head determines that . . . equivalent commercial services are not available on reasonable terms." 51 U.S.C. § 50504(a)(1)(D). Defendant's attempt to read "services" out of the provision—suggesting the statute governs only "use of facilities"—ignores that Congress intentionally linked the two, recognizing that the use of federal launch facilities inherently involves the provision of launch services.

The structure and purpose of Title 51 reinforces this interpretation. Section 50504 is not an isolated clause—it appears within a broader statutory framework designed to protect commercial space providers from unfair government competition. *See* (Doc. 86 ¶¶ 17–21). This protective aim is echoed in neighboring provisions, including § 50501(5)–(7), § 50702(d)(4), § 50901(a)(1)–(9), § 50902(7)–(10), § 50913(a)(2), and § 50914(b), which reflect a coordinated legislative scheme designed to protect the private space industry from displacement by the federal government. These provisions consistently speak not only in terms of property, but of **services**, market competition, and the government's duty to prioritize commercial availability.[7]

---

[7] *See also* 138 Cong. Rec. H11718-02, 138 Cong. Rec. H11718-02, H11722, 1992 WL 280154 ("[Tile V] of the bill is significant because it attempts to make the Federal Government a better customer for **commercial space goods and services**[.] . . . NASA should not be in the business of building and launching rockets when the private sector can do the job, and can do it more efficiently . . . The committee believes that NASA should make maximum use of **commercial launch services**[.]") (emphasis added); (Doc 86 ¶ 82) (Colonel Beg conflating the use of Eastern Range facilities with the provision of Day-of-Launch Services offered at those facilities).

Defendant's theory is not only at odds with the statute, it also directly contradicts nearly two decades of the government's own policy and practice. Since at least 2007, the Department of the Air Force has interpreted this statutory mandate to require a written determination that "equivalent **commercial services** are not available on reasonable terms" before providing any "**facilities, equipment and/or services**" to commercial users. *See* (Doc. 86 ¶¶ 26–31). These instructions explicitly include "launch services" within their certification framework, requiring, for example, that SLD 45 provide base support "only where substantially equivalent support is not available from domestic commercial/spaceport sources." *Id*. ¶ 34.[8]

In sum, Defendant's APA-related arguments fail at every turn: its mootness theory contradicts controlling precedent and the SAC's well-pled allegations of ongoing injury; its "change in the law" theory finds no support in the text of 10 U.S.C. § 2276a.; and its reading of § 50504 is both procedurally barred and substantively baseless as contrary to the statutory text, structure and purpose, and longstanding agency policy and practice. The APA claims should proceed.

### B. The SAC Adequately Pleads a Lanham Act False Advertising Claim

Defendant's 12(b)(6) argument against the Lanham Act claims does not fare any better. For starters, it hinges on the same flawed statutory theories already refuted above (*i.e.*, that § 2276a. silently repealed Title 51, or that Title 51 never applied to the

---

[8] In his September 30, 2024, deposition, Jerry King—SLD 45's Director of Plans and Programs—confirmed that Title 51 **requires** the Space Force to certify the non-availability of domestic commercial services prior to providing Day-of-Launch Services to commercial customers. King Dep. Tr. at 34.

12

provision of launch services). More fundamentally, the Motion is devoid of any legal authority and fails to engage with the *actual words*, *context*, and *effect* of the challenged statements. Instead, it relies on generalized objections that ignore the *prima facie* elements of a false advertising claim—the very analysis that Rule 12(b)(6) demands.

Even under Rule 9's heighted pleading standard,[9] the SAC survives dismissal because it pleads more than enough factual matter—with particularity—to plausibly state a false advertising claim. As this Court previously noted, a plaintiff need only identify one statement that, taken in its full context, meets each of the required Lanham Act elements. (Doc. 60 at 13–14). The SAC does exactly that.

i. Misrepresentations at Industry-Wide Events

First, the SAC alleges that in September 2013, senior Space Force official Paul Rosati falsely represented that commercial users were required to procure flight safety analysis services **exclusively** from the Space Force in order to launch from the Eastern Range. (Doc. 86 ¶¶ 68–74). Speaking at an industry event focused on commercial launch operations—attended by key players in the private space sector, including executives from Spaceport America, ENSCO, and Mosaic ATM—Rosati falsely described flight safety analysis as a wholly exclusive function of the Space Force, leaving no room for commercial alternatives. Responding to comments noting that private entities were capable of conducting safety analysis, Rosati categorically

---

[9] Which the Court **should not** apply because in this circuit, "the weight of authority holds that a Lanham Act claim . . . need not be pleaded with specificity." *Incarcerated Ent. v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1226 (M.D. Fla. 2017); *see also Belcher Pharms. v. Hospira, Inc.*, 2019 WL 12528981, at *2 (M.D. Fla. Feb. 15, 2019) (Moody, J.) (finding claim sufficiently pled under Rule 8).

dismissed the possibility, stating: "**I don't care** what [commercial providers] can do, if they want to fly from my range, I'm going to do the Flight Safety Analysis." *Id*. ¶¶ 70–71 (emphasis added). When attendees emphasized that commercial providers could indeed satisfy regulatory standards, Rosati doubled down: "**that doesn't matter**, I'm not letting them fly from my range unless I'm sure it's safe, and the only way I can do that is if I do the [entire] analysis." *Id.* (emphasis added).[10]

### ii. Misrepresentations via Costumer Service Channels

The SAC also alleges that the Space Force repeated these false claims of exclusivity directly to commercial launch customers through its routine customer service channels.[11] Specifically, in 2017, on two separate occasions, a SpaceX employee was directly dissuaded from outsourcing Day-of-Launch Services to cheaper third parties in connection with a forthcoming launch after Rosati expressly stated to him that, "I'm not going to approve a launch from the Cape [Canaveral] unless I do the safety [analysis]." *Id*. ¶ 76.

Similarly, in December 2022, the Space Force held a call with several industry players in the commercial aerospace sector, including VAYA Space, ARCTOS, and Launch On Demand. The context of the call was for VAYA Space (a commercial launcher) to obtain guidance on its first launch from a federal range; specifically, on

---

[10] On April 1, 2025, Plaintiff served upon Defendant the Expert Report of Lisa Rosenblum Loucks, who opines that Plaintiff is capable of providing Day-of-Launch Services that meet—and in some respects exceed—the equivalent Day-of-Launch Services offered by the Space Force.

[11] Mr. King testified that SLD 45 assigns all customers a point of contact ("POC") to guide them through the process of securing a final "statement of support," which enables the Space Force to provide services to the consumer and collect associated fees. King Dep. Tr. at 20–21.

whether it could retain the same Day-of-Launch Services providers it had used successfully at non-federal ranges. *Id.* ¶ 78. Rosati, however, categorically rejected that option, stating that "the SLD 45 will do [all] the assessments," and inaccurately stating that commercial providers "don't have the data" and therefore "can't do the assessments" themselves. When VAYA cited FAA regulations allowing for such outsourcing, Rosati objected, noting that the Space Force must still "do all the analysis that gets all the other things complied to." This effectively dissuaded VAYA Space from retaining Day-of-Launch Services from commercial providers. *Id.* ¶¶ 79–80.

### iii.    Misrepresentations by Colonel Beg

Further, the SAC alleges that at a 2025 space industry luncheon attended by commercial launch customers, Colonel Meredith Beg falsely suggested that commercial users must obtain telemetry, weather forecasting, and other Day-of-Launch Services **exclusively** from the Space Force. *Id.* ¶ 82. Speaking to an audience that included aerospace contractors and commercial launchers, Colonel Beg said commercial launchers should think of SLD 45 as a "Port Authority," and equated the Day-of-Launch Services offered at the Eastern Range with the mandatory fees that users must pay to a Port Authority for the use of its infrastructure. In doing so, Colonel Beg conveyed the false notion that obtaining Day-of-Launch Services from the Space Force was not merely a negotiable option, but **a mandatory** condition for commercial missions launching from the Eastern Range—much like vessels must pay a port authority non-negotiable fees to operate within its jurisdiction. *Id.*

15

Each of these statements falsely conveyed that commercial users **must exclusively** obtain Day-of-Launch Services from the Space Force to launch from federal ranges. These false claims promoted the Space Force's commercial interests,[12] as they influenced the procurement processes of commercial customers, steering them away from commercially available options. At a minimum, each statement was misleading, as reflected by the fact that the Space Force is currently scheduled to provide Day-of-Launch Services for 100% of commercial launches from federal ranges.[13] These allegations alone are sufficient to survive the pleadings stages of this case. *See*, *e.g.*, *Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1228 (M.D. Fla. 2017) (denying dismissal where defendant omitted discussion of the relevant factors); *VG Innovations, Inc. v. Minsurg Corp.*, 2011 WL 1466181, at *5 (M.D. Fla. Apr. 18, 2011) (denying dismissal where the challenged statements influenced purchasing decisions).

### iv. Misrepresentations in Written Materials

Yet, the SAC does not stop there. The SAC also identifies false and misleading statements portraying Day-of-Launch Services as a Space Force exclusive function in written materials distributed to commercial customers. The written materials include

---

[12] It is not disputed that the Space Force has a strong financial interest in the provision of Day-of-Launch Services to commercial launchers. *See* (Doc. 86 ¶ 65); 10 U.S.C. § 2276a.(b)(2) & (d).

[13] Defendant argues that its servicing of 100% of commercial launches is of no moment because Plaintiff cannot show that the Space Force's conduct is unlawful. That misses the mark. First, as noted earlier, Plaintiff has in fact established that Title 51 prohibits Defendant from providing Day-of-Launch Services without the proper noncompetition certification. Second, the falsity of the challenged statements does not hinge on legality. What matters is that Defendant falsely promoted Day-of-Launch Services as an **exclusive** Space Force function.

boilerplate language, which, by default, instructs each commercial customer that it "**shall**" retain Day-of-Launch Services from the Space Force.  *See* (Doc. 86 ¶¶ 87–90).

More notably, the Space Force also distributes template documents that purport to guide customers through the regulatory compliance process. *Id*. ¶¶ 91–95. One of these documents, the Sample IP, presents a list of regulatory points followed by pre-filled, default answers that the **Space Force has typed in advance for all its customers**. *Id*. These boilerplate statements are not advisory—they are framed as the expected submissions, misleading users into believing that the only path to compliance is to retain the Space Force for Day-of-Launch Services. *Id*. Among other things, the Sample IP arbitrarily states that, "SLD 45 **is requested** to receive RRR telemetry . . . and: Provide telemetry data to control center trailer . . . Telemetry data is desired for as much of flight as possible, using existing range resources." *Id*. Yet, telemetry services need not be requested from the Space Force.[14]

More troubling, the Sample IP also contains pre-filled, boilerplate language that induces commercial users to rubber stamp an inaccurate and unsubstantiated certification of domestic nonavailability for launch services. *Id*. at 94–95. The pre-typed statements assert—without evidence—that no domestic providers offer comparable "function, capacity, utility, and quality," or can "meet the current CUSTOMER NAME launch schedule," or match the Space Force's pricing or terms.

---

[14] As noted in the SAC, Plaintiff is not only fully capable of providing telemetry services, but has done so at a level that meets—and in some respects exceeds—the quality of comparable services offered by the Space Force.  *See* (Doc. 86 ¶¶ 52–56); *see also* n.10 *supra*.

17

*Id*. This is a literally false statement, *see* n.14 *supra*, that breaches the Space Force's own policies and directives. *See, e.g.,* Instruction 10-1215, ¶ 11.3 (as updated on April 9, 2024) ("Supporting data must accompany the [certification]"). The Sample IP also states that the language within it "must be contained in every Program Introduction submitted by a commercial company to the SLD 45," further misleading customers into believing that adoption of the Space Force's default narrative is mandatory for compliance. *Id*. Clearly, at a minimum, these statements are misleading.

In sum, the SAC satisfies—and surpasses—the pleading threshold for a Lanham Act false advertising claim. The SAC identifies multiple, specific misrepresentations made by the Space Force—both orally and in writing—directed at commercial customers, all falsely portraying Day-of-Launch Services as an exclusive government function. Defendant's Motion sidesteps these well-pled allegations and fails to engage with the actual text and context of the statements at issue. Dismissal of the claims under Rule 12(b)(6) requires more.

## IV. CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

Dated: April 25, 2025.                                   Respectfully submitted,

By: */s/ Francisco Rodriguez*
Francisco A. Rodriguez
(FL Bar No. 653446)
francisco.rodriguez@reedsmith.com
Ana R. Ulseth
(FL Bar No. 1022151)
aulseth@reedsmith.com
Jonathan Florez

>                                   (FL Bar No. 1059164)
>                                   Jonathan.florez@reedsmith.com
>
>                                   **REED SMITH LLP**
>                                   200 South Biscayne Boulevard
>                                   Suite 26
>                                   Miami, FL 33131
>                                   Telephone: (786) 747-0200
>                                   Facsimile: (786) 747-0299
>
>                                   *Counsel for Plaintiff*
>                                   *Launch On Demand LLC*

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on April 25, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participant:

James Bickford
Department of Justice, Civil Division
1100 L Street NW
Washington, DC 20005
202-305-7632
James.Bickford@usdoj.gov

*Counsel for Defendant*
*The United States*

>                                   /s/ *Francisco Rodriguez*
>                                   Francisco A. Rodriguez