**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**Case No.: 23-cv-00789-CEM-RMN**

LAUNCH ON DEMAND LLC,

Plaintiff,

ORAL ARGUMENT REQUESTED

v.

THE UNITED STATES OF AMERICA,

Defendant.
_________________________________________/

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiff, Launch on Demand LLC ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 37, respectfully moves this Court for an order compelling Defendant, the United States of America ("Defendant"), to produce all documents responsive to Requests for Production Nos. 4, 6 through 9, and 11 which Plaintiff served on November 3, 2023. In support of this motion, Plaintiff states as follows:

## INTRODUCTION

Defendant's production to date is manifestly deficient. Of the **233 commercial launches** originally identified in Exhibits A and B to the Amended Complaint, Defendnat has produced financial information for only 31 launches—**just 13% of the relevant universe**. Worse still, after nearly

two years of litigation, and an order from this Court requiring disclosure of Administrative Record documents, Defendant's entire Administrative Record production to date consists of **a single, 28-page PDF**—an anemic disclosure emblematic of Defendant's failure to meet its discovery obligations.

For nearly a year, Plaintiff engaged in repeated meet-and-confer efforts to obtain the requested materials, yet Defendant's rolling productions were continuously cabined by blanket APA objections—excluding documents plainly relevant to Plaintiff's Lanham Act claims. Among those are crucial email communications between the Space Force and commercial customers during the introductory phase of the launch process—"which begins when a potential customer makes initial contact with the [federal range]"[1]—**none of which have been produced**, despite the centrality of these documents to Plaintiff's claims of customer misrepresentations by the Space Force.

Defendant is not entitled to avoid discovery obligations simply because it is the Government, particularly when the requested documents are narrow, specific, and readily available to the Government for production.

## PROCEDURAL BACKGROUND

1. Plaintiff filed this action on April 28, 2023 (Doc. 1), alleging that Defendant is unlawfully providing space launch services ("Day-of-Launch

[1] Space Launch Delta 30, Program Support Guide (June 2023) at 5–6, attached here to as **Exhibit C**.

Services") without first determining the unavailability of equivalent commercial alternatives, in violation of 5 U.S.C. § 500 *et seq*. (the "APA claim"), and falsely promoting those services as exclusive to the Space Force, in breach of the Lanham Act, 15 U.S.C. § 1051 *et seq*. (the "Lanham Act claim").

2. On September 14, 2023, Plaintiff filed an Amended Complaint as of right pursuant to Fed. R. Civ. P. 15(a) (Doc. 32). On October 12, 2023, Defendant moved to dismiss the Amended Complaint (Doc. 42).

3. On November 3, 2023, Plaintiff served its First Set of Requests for Production ("RFPs") on Defendnat. Among other things, those requests seek all documents reflecting the Government's charges, costs and profits associated with the commercial launches listed in Exhibits A and B to the Complaint, and all communications with commercial users regarding the process of launching form a federal range. *See* RFPs, attached hereto as **Exhibit A**.

4. Following service of the RFPs, Plaintiff engaged in ongoing meet-and-confer efforts with Defendant concerning the production of materials responsive to its Lanham Act and APA claims. These efforts included weekly and biweekly discussions over the course of nearly a year, aimed at facilitating the timely and complete production of relevant information.

5. During these discussions, Defendant objected to producing any APA-related discovery, and materials responsive to the Lanham Act claim, before the Court ruled on its motion to dismiss, filed on October 12, 2023 (Doc.

42). According to Defendant these documents were part of the Administrative Record and, thus, not subject to production prior to a ruling from the Court on the motion to dismiss. *See* Defendant's Objections to RFPs, attached hereto as **Exhibit B**.

6. On September 31, 2024, this Court ruled on Defendant's motion to dismiss (Dkt. 60), granting in part and denying in part the relief requested therein. The Court dismissed Plaintiff's Lanham Act claims without prejudice but found the APA allegations sufficiently pled.

7. After the Court's ruling, Plaintiff continued to diligently pursue the withheld documents, conferring with Defendant about the anticipated production of the Administrative Record. However, after repeated unsuccessful attempts to obtain a firm production timeline from Defendant, Plaintiff filed a motion to compel production of the Administrative Record on December 4, 2024 (Doc. 66).

8. On December 19, 2024, the Court denied Plaintiff's motion to compel and directed Defendant to produce a portion of the administrative record by February 15, 2025. (Doc. 70).

9. To that end, the parties entered into an Amended Protective Order on February 13, 2025. (Doc. 84). According to Defendant, the forthcoming Administrative Record required extra protections under the Arms Export Control Act, and could not be produced without an amended protective order.

10. Previously, on February 3, 2025, Plaintiff filed an unopposed motion seeking to extend the discovery deadlines (Doc. 75). The Court granted the extension and entered an Amended Scheduling Order on February 7, 2025 (Doc. 79) (the "Amended Scheduling Order").

11. The Amended Scheduling order set the deadline to complete discovery and serve motions to compel for July 14, 2025. *Id.*

12. On February 14, 2025, Defendant, for the first time, produced Administrative Record documents that are material Plaintiff's APA and the Lanham Act claims (the "February 2025 Production").

13. Despite being its first production of Administrative Record documents since this case began, the February 2025 production was utterly underwhelming, consisting of **a single 28-page long PDF file**. None of its contents were subject to the Arms Export Control Act.

14. On March 4, 2025, Plaintiff filed a consented Second Amended Complaint (the "SAC"), reasserting its Lanham Act allegations while preserving the APA claims the Court had previously upheld. (Docs. 86 & 87).

15. On April 4, 2025, Defendant moved to dismissed the SAC (Doc. 93). On April 21, 2025, Defendnat filed a motion to stay all deadlines in this case pending disposition of the motion to dismiss. (Doc. 94). Both motions are currently pending before this Court.

## MEMORANDUM OF LAW

16. A party may move for an order compelling discovery from the opposing party. *See* Fed. R. Civ. P. 37(a). "The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information." *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985); *Rossbach v. Rundle*, 128 F. Supp. 2d 1348, 1354 (S.D. Fla. 2000). Blanket objections are improper. In fact, "to even merit consideration, 'an objection must show specifically how a discovery request is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden.'" *Mazzoni v. Halpern*, 2009 WL 10706228, at *2 (M.D. Fla. July 29, 2009) (quoting *Coker v. Duke & Co.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998).

### A. Defendant Should Be Compelled to Produce Financial Information Responsive to RFPs Nos. 6–9

17. Plaintiff asserts Lanham Act claims premised on the Space Force's false advertising and misrepresentations regarding the Day-of-Launch Services it provides to commercial users at federal space ranges. *See* (Doc. 86 ¶¶ 67–116). These misrepresentations—specifically, that such services are exclusively available through the Space Force—have unlawfully displaced Plaintiff from the market, diverting commercial launch customers and

depriving Plaintiff of profits it would otherwise have earned. To substantiate these claims, Plaintiff requires the Defendant's financial records concerning the pricing, cost structure, and profitability of the services at issue.

18. To this end, RFP Nos. 6–9 seek discrete financial records: (i) amounts charged by Defendant to commercial users for launches; (ii) the costs incurred by Defendnat in connection with those launches; (iii) profits earned; and (iv) Space Launch Delta 30 and 45 Job Order Number ("JON") account balances dating back to 2019.[2] Although Defendant produced some responsive documents, its production to date remains woefully inadequate.

19. RFP Nos. 6 through 9 are narrowly tailored to a list of commercial launches identified in Exhibits A and B to the Amended Complaint. These exhibits, in turn, identify **233 commercial launches**—189 past launches from March 2019 through September 2023, and 44 additional scheduled launches through 2024. *See* (Doc. 32, Exs. A–B). Yet, to date, Defendnat has produced only 36 JONs (two of which were fully redacted), covering **just 31 launches**. This production accounts for **less than 14%** of the listed launches.

20. Moreover, the limited JONs produced thus far are devoid of the financial and technical detail necessary to fully ascertain the Space Force's costs, and the amounts charged, to commercial users. For instance, the JONs

[2] *See* RFPs, attached hereto as **Exhibit A**.

lack the corresponding **Range Control Center ("RCC")** codes and **Work Order Numbers ("WONs")**, which are essential for understanding what specific services were performed in support of each of the identified launches.

21. Likewise, Government has not produced a comprehensive list of **Element Expense Investment Codes ("EEICs")**, which are necessary to interpret the cost categories, allocations, and accounting structure embedded in the JON records.

22. Plaintiff, through consultation with former Space Launch personnel, has confirmed that the Space Force's Comptroller's Office maintains a comprehensive accounting of all JONs, RCCs, WONs, and EEICs associated with each commercial launch identified in Exhibit A and B, and that these records are readily accessible to the Government for production.

23. Because Defendant's production remains woefully incomplete—and the requested financial records are narrowly tailored and directly relevant to Plaintiff's Lanham Act claims—Plaintiff respectfully requests that the Court compel Defendant to produce the following without further delay:

- All remaining JONs associated with the commercial launches listed in Exhibits A and B to the Amended Complaint;
- The corresponding RCC codes and WONs for each such JON; and
- A complete list of all EEICs used in connection with the listed launches.

### B. Defendant Should Be Compelled to Produce Introductory Phase Communications Responsive to RFPs Nos. 4 and 11

24. **Not a single communication** between the Space Force and commercial users during the introductory phase of the launch process has been disclosed. Nor has Defendant produced **any** of the completed certifications of non-availability that every customer is required to submit to Defendant under the CSOSAs ("Commercial Space Operations Support Agreements") and NCQs ("New Customer Questionnaires") before obtaining Space Force services. This is despite the fact that RFP Nos. 4 and 11 expressly seek such documents and communications.

25. Although the Space Force's own materials describe the introductory phase of the launching process as the stage that "begins when a potential customer makes initial contact with the [federal range]," Exhibit C at 5–8,[3] Defendant's production is **entirely devoid** of any such initial communications or contacts. Instead, Defendnat has selectively produced blank templates of the certifications of non-availability, and **has failed to produce a single communication** involving any potential customers,

[3] The Program Support Guide describes the launching process as comprising three distinct phases: (i) the introduction phase, where the user engages in initial contact with the Space Force, submits the NCQ, and satisfies the non-availability certification requirements; (ii) the operations phase, where technical and operational compliance is addressed; and (iii) the closeout phase, which concludes the engagement between the user and the Space Force.

prospective users, their initial inquiries, or any consultation regarding their interest in launching from a federal range.[4]

26. Communications during the introductory phase are not only relevant—they are essential. Plaintiff alleges that Space Force misled commercial users into believing that Day-of-Launch Services could only be obtained from the Space Force. Any such misrepresentations would logically occur at the outset of user engagement, during initial inquiries, or during the submission and review of NCQs and non-availability certifications. **The complete absence** of such materials is difficult to reconcile with the structured nature of the Space Force's onboarding process and raises serious questions about the completeness of Defendant's production.

27. Plaintiff is also concerned by indications—originating from Defendant's prior counsel of record—that relevant evidence may have been lost or destroyed by the Space Force. Specifically, prior counsel suggested that email accounts belonging to key Space Force personnel—individuals responsible for engaging with prospective customers and initiating the onboarding process—may no longer be recoverable. This is particularly troubling given that some of these individuals departed the Space Force well

[4] This omission is particularly striking given the volume of largely irrelevant material Defendant has chosen to produce—hundreds of emails reflecting extensive back-and-forth between Space Force and users concerning technical minutiae and operational logistics near T-0. These communications, while voluminous, have little to no bearing on the core misrepresentations alleged by Plaintiff.

after this lawsuit commenced and after entry of this Court's Order **requiring the preservation of all relevant evidence**. *See* (Doc. 20 ¶ 3).[5]

28. Because these communications fall squarely within the scope of RFPs 4 and 11, and directly bear on Plaintiff's claims of marketplace exclusion and customer deception, Plaintiff respectfully requests that the Court compel Defendant to produce all materials responsive to RFP Nos. 4 and 11, including:

- All communications between the Space Force and commercial users relating to the submission, completion, or approval of NCQs and non-availability certifications;
- All correspondence exchanged between the Space Force and commercial users during the introductory phase of the launch process, as defined in the Government's Program Support Guide; and
- Any guidance, templates, or internal instructions governing Space Force communications with users during the introductory phase.

**C. Plaintiff is Entitled to Recover the Attorney's Fees Incurred in the Bringing of this Motion to Compel**

29. Rule 37(a)(5)(A) provides that a Court must grant "reasonable expenses incurred in making the motion, including attorney's fees," unless the movant filed the motion before attempting in good faith to obtain the disclosure without court action; the non-production was substantially justified; or other circumstances make award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A).

[5] Plaintiff expressly reserves all rights to seek appropriate relief in connection with the loss, unavailability, or improper handling of relevant evidence.

30. None of these exceptions apply here. As detailed above, Plaintiff engaged in nearly a year of good-faith meet-and-confer efforts to obtain core financial documents and onboarding communications plainly responsive to RFPs 4, 6–9, and 11. Despite these efforts, Defendant has failed to meaningfully supplement its production—producing only a fraction of the requested materials and withholding entire categories of relevant documents without valid justification. *See* Defendant's Objections to RFPs (raising blanket APA objections to materials that are independently responsive to the Lanham Act claim).

31. Thus, an award of attorney's fees is warranted here. *See Pharis v. Kirkman Mgmt., LLC*, 2013 WL 12166242, at *1 (M.D. Fla. Oct. 9, 2013) (granting attorney's fees incurred in the bringing of a motion to compel where none of the exception applied).

WHEREFORE, Plaintiff requests that this Court issues an order compelling Defendant to produce all documents responsive to RFP Nos. 4, 6 through 9, and 11 **by July 13, 2025**.

## **Local Rule 3.01(g) Certification**

Pursuant to Local Rule 3.01(g), the undersigned certifies that she conferred by email with Defendant's counsel on June 10 and 13, 2025, and that Defendant opposes the relief sought in this motion.

Dated: June 13, 2025.

Respectfully submitted,

By: /s/ Francisco A. Rodriguez
Francisco A. Rodriguez
(FL Bar No. 653446)
francisco.rodriguez@reedsmith.com
Ana R. Ulseth
(FL Bar No. 1022151)
aulseth@reedsmith.com
Jonathan Florez
(FL Bar No. 1059164)
Jonathan.florez@reedsmith.com

**REED SMITH LLP**
200 South Biscayne Boulevard
Suite 26
Miami, FL 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participant:

James Bickford
Department of Justice, Civil Division
1100 L Street NW
Washington, DC 20005
James.Bickford@usdoj.gov

*Counsel for Defendant*

/s/ *Francisco A. Rodriguez*
*Counsel for Plaintiff*